OPINION OF THE COURT
Herbert I. Altman, J.
*497 The People’s motions to quash a subpoena seeking production of telephone records and for a protective order denying discovery of a search warrant application are consolidated for decision with defendant’s application for recusal and with his motion seeking dismissal of the indictment for alleged ethical lapses on the part of the People.
The People’s application for a protective order denying discovery of the search warrant application is denied. I have reviewed the People’s ex parte submissions and find that they have not established good cause for denying defendant access to the document. Accordingly, the People are to turn over the application to defense counsel without further delay.
The People seek to quash defendant’s subpoena which directed NYNEX to produce the telephone records of Bridgitte Marx. The People’s application is denied, as the telephone company has already complied with the subpoena (see, Matter of Brunswick Hosp. Ctr. v Hynes, 52 NY2d 333). The People, moreover, have no standing to quash a defense subpoena served on a third party, not its agent (see, People v Grosunor, 108 Misc 2d 932, 936; and see, People v Doe, 96 AD2d 1018; People v Di Raffaele, 55 NY2d 234).
In the alternative the People seek a protective order for these records. They contend that their release to defendant, who, they allege, has solicited the murder of Ms. Marx and another and commanded several acts of arson, endangers her as well as those whose identities may be discovered by calling the telephone numbers contained in the records. They also question why the defendant requires these extensive records, and argue that unless he can articulate a legitimate use for a particular telephone number, the privacy and safety of the individuals whose identities would be divulged by release of the information must remain paramount.
Defendant first argues that a protective order is not available where documents have been subpoenaed from a third party. He also contends that the People’s safety and privacy concerns are baseless, and points out that the address of Ms. Marx is already known to him. Further, he suggests that an order forbidding defense counsel from revealing the information in the records to his client would adequately answer the People’s concerns. He disputes their suggestion that the subpoena is nothing more than a “fishing expedition” and states that he could, if required, demonstrate in camera that what is sought is highly relevant to the ultimate issues in the case.
The issuance of protective orders is governed by CPL 240.50, as follows: “1. The court in which the criminal action is pend *498 ing may, upon motion of either party, or of any affected person, or upon determination of a motion of either party for an order of discovery, or upon its own initiative, issue a protective order denying, hmiting, conditioning, delaying or regulating discovery pursuant to this article for good cause, including constitutional limitations, danger to the integrity of physical evidence or a substantial risk of physical harm, intimidation, economic reprisal, bribery or unjustified annoyance or embarrassment to any person or an adverse effect upon the legitimate needs of law enforcement, including the protection of the confidentiality of informants, or any other factor or set of factors which outweighs the usefulness of the discovery.”
The primary issue before me is whether the People may apply for a protective order for material which the defense hopes to obtain via subpoena. Protective orders are devices for “regulating discovery pursuant to this article [CPL art 240]” (CPL 240.50 [1]). Strictly speaking, a subpoena is not a discovery tool and is not issued as part of discovery. Discovery, which is regulated by CPL article 240, is directed to the opposing party (see, e.g., CPL 240.20 [1] [“upon a demand to produce by a defendant * * * the prosecutor shall disclose” (emphasis added)]). Subpoenas, which are governed by CPL article 610 and CPLR article 23, are directed to third parties and are used “ ‘ “to compel the production of specific documents that are relevant and material to facts at issue in a pending judicial proceeding” ’ ” (Matter of Terry D., 81 NY2d 1042, 1044). The distinction is implicit in the maxim that “a subpoena duces tecum may not be used for the purpose of discovery” (Matter of Terry D., 81 NY2d 1042, 1044; and see, discussion in Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 610.20, at 304). As the protective order is a creature of the discovery article, can it be used to regulate process which directs a third party to produce documents outside of discovery?
To answer this question in the negative would remove any meaningful oversight of the subpoena process by the court. As the subpoena in question was not served upon an arm of the State, it was not necessary for defense counsel to obtain the prior approval of a Justice of the Supreme Court in order to issue it (CPLR 2307). NYNEX may have had standing to move to quash the subpoena had it chosen to do so, but the telephone company had neither interest in the instant prosecution nor any knowledge of the issues involved. Although it notified Ms. Marx that it would comply with the subpoena, she was not the party to whom the subpoena was directed and she had no *499 standing to move to quash. (“Bank records, although they may reflect transactions between the bank and its customers, belong to the bank. The customer has no proprietary or possessory interests in them. Hence, he cannot preclude their production * * * The rule is the same with respect to telephone records'" [People v Doe, supra, at 1019 (emphasis added)].)
The telephone company, thus, had the ability to preclude production of the documents via a motion to quash, but no interest in doing so. The District Attorney and the complainant have the interest, but not the power. If a protective order may not issue in this situation, then there is no mechanism by which a complainant may protect her privacy against the defendant who has allegedly victimized her. A more toothless statutory scheme is difficult to imagine.
It is difficult to conceive, too, that the court to which a judicial subpoena is returnable does not retain inherent authority and oversight over it, or that it cannot regulate the production of documents or items issued under its imprimatur. A judicial subpoena is not issued in the abstract, but “requires the context of some action or proceeding” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2301:4, at 236; see also, Matter of Blake, 51 Misc 2d 42). It is reasonable to suppose that the court thus retains the authority to limit the release of records which are relevant to the prosecution before it and that it need not stand by, impotent, should a party, in its caprice or in order to harass an adversary, chose to subpoena records which have no bearing on issues germane to trial. This is especially so where there are strong countervailing arguments against disclosure. This is a case in which breaching the complainant’s privacy may have far-reaching consequences. The defendant is charged with conspiring to murder several tenants who were causing him annoyance. Not only would production of these documents subject the victim and those she called to almost limitless harassment, but there exists the possibility that it would compromise their safety as well. The argument in favor of judicial oversight is, thus, even stronger than that presented where confidential personnel records are subpoenaed. In that situation, where only privacy issues are at stake, the party seeking the records must make a preliminary showing of materiality in order to defeat a motion to quash (see, People v Gissendanner, 48 NY2d 543). There should not be a lesser standard where legitimate safety concerns are at stake as well.
Moreover, there is the possibility that the defendant has no valid use for some, if not most, of the information contained in *500 these extensive records and that he is using the subpoena at issue in part as a discovery device. To the extent that he is unable to establish that certain information is material, his subpoenaing of the telephone records constitutes nothing more than mere discovery, which may be fully regulated by means of a protective order.
All of these factors suggest that the term “discovery” in CPL 240.50 ought not be understood narrowly and that the mechanism of a protective order be made available to encompass information sought by way of subpoena as well as by way of the discovery article. It is not unreasonable, therefore, to require defense counsel to make a preliminary showing, as he himself suggests, that the telephone records are reasonably likely to contain information which is highly relevant to key issues at trial. Accordingly, he is given leave to make an ex parte submission, in writing and under seal, which makes such a showing. Should he succeed in doing so, the release of the information may rest upon the further condition that the information in question not be divulged to his client.
Defendant moves for recusal on the ground that telephone records of Bridgitte Marx which he had subpoenaed were turned over to the People at my direction. As defense counsel is aware, the telephone records were turned over to the People under the mistaken belief that they pertained to the informant. On November 20, 1997 defense counsel asked me to sign a subpoena for the telephone records of the informant, who was in the custody of the Department of Correctional Services. In order to protect the safety of the individuals whose identities would be revealed by disclosure of that information, I directed the People to subpoena the records and to take custody of them when they were produced in court. When, in the middle of a trial of another matter, I was informed that telephone records subpoenaed in connection with this case had arrived (and not having been informed by defense counsel that he had subpoenaed the telephone records of Ms. Marx or anyone else), I mistakenly supposed that they were the records discussed on November 20 and caused them to be delivered to the People. Defendant’s application is devoid of merit and is denied. I do not speculate as to why the application was made.
Defendant also seeks dismissal of the indictment on the ground that the People have been guilty of a number of ethical violations. In a decision dated January 29, 1998 I found that the People’s misuse of the subpoena power was inappropriate. Defendant asserts that this incident should be viewed in *501 conjunction with what he alleges was the People’s improper action in taking custody of Ms. Marx’s telephone records and with a third incident in which individuals who were presumably members of the District Attorney’s Office attempted to interview one of defendant’s employees. This person, Patrick Downey, retained counsel prior to the incident who notified the People that they were not to speak with the client without making prior arrangements with the attorney. According to the employee, he was approached by several individuals who, he believes, were members of the District Attorney’s Office and was asked ‘You’re Patrick Downey, the owner of 42 Clinton Street, right?” Mr. Downey gave a sarcastic reply and nothing more was said. One of the individuals, whom defense counsel speculates was one of the Assistant District Attorneys who was prosecuting his case, photographed him at that time.
I do not find that these incidents demonstrate that the People have engaged in a systematic pattern of ethical violations. The People took custody of Ms. Marx’s telephone records as a result of my inadvertence. Defendant argues that the incident with Mr. Downey constituted a breach of Code of Professional Responsibility DR 7-104 (22 NYCRR 1200.35). That rule provides in part:
“A. During the course of the representation of a client a lawyer shall not:
“1. [c]ommunicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.”
Assuming, arguendo, that Mr. Downey’s accusations are true, the People have not violated DR 7-104. I first note that Mr. Downey was not a “part/’ to the “matter”, which is the criminal prosecution of the defendant (see, Grievance Comm. for S. Dist. of N. Y. v Simels, 48 F3d 640). Mr. Downey is not named in that prosecution, nor is it even contended that he is a suspect or target of another investigation. Nor is it clear that the persons who approached Mr. Downey were attorneys or merely investigative agents in the employ of the People. There is no violation of the Code if a prosecutor merely employs “legitimate investigative techniques in conducting or supervising criminal investigations” (United States v Hammad, 858 F2d 834, 839; see also, United States v Thompson, 35 F3d 100, 105). The speculation that the person who took photographs of Mr. Downey was an attorney is of no moment, as taking pictures *502 does not fall within the proscription contained in the rule. Defendant points to no authority which prevents a prosecutor from searching out and speaking with a potential witness to a crime, whether or not he or she is represented by counsel. Accordingly, defendant’s motion to dismiss is denied.