OPINION OF THE COURT
Martin E. Ritholtz, J.
In a motor vehicle negligence action, does the mere fact that a defendant was in possession of a cell phone at the time of an accident entitle the plaintiff to said defendant’s cell phone records, in order to ascertain whether the cell phone was in use at that time, and with whom?
This underlying issue serves as the basis of plaintiffs instant motion, pursuant to CPLR 3120 and 3124, to enforce a subpoena duces tecum on Célico Partnership, doing business as Verizon Wireless, seeking defendant Esther Katoni’s cellular phone records for calls transmitted or received by her on April 1, 2006, the date of the subject accident, and on April 2, 2006. The defendants cross-move herein, pursuant to CPLR 2304 and 3103, to quash the forementioned subpoena, on the grounds that it is an improper attempt to obtain discovery, constitutes a fishing expedition, and seeks postaccident records.
Background
On April 1, 2006, at approximately 11:00 a.m., plaintiff Michael Morano was operating a motorcycle which collided with a motor vehicle, operated by defendant Esther Katoni, and which *466 had. been in the process of making a right turn into her driveway at 629 Ashford Avenue, Ardsley, New York. The within action was commenced on July 26, 2006 with the filing of a summons and complaint against, inter alia, defendant Esther Katoni, alleging that due to her negligence, she caused the subject collision, which resulted in severe injuries to the plaintiff. Issue was joined on August 31, 2006 with service of a verified answer.
Discovery Demand for Defendant Katoni’s Phone Records
Plaintiff served defendants with combined demands, dated October 5, 2006, which included the following:
“Demand for Discovery and Inspection of Automobile Telephone Records ... if the defendant possessed an automobile telephone for the vehicle which was involved in the accident, or a cellular phone which was on the person of the defendant at the time of the accident, and said telephone, as applicable, was operational on the date of the accident, then demand is hereby made for the automobile telephone/cellular telephone records for the date of the alleged occurrence.”
In a response, dated April 6, 2007, the defendants objected to the demand as being overly broad and unduly burdensome. But, they indicated: “Nevertheless, defendants are not in possession of any automobile telephone records.”
Deposition Testimony
On February 23, 2007, Police Lieutenant Carl Calabrese testified that he was dispatched on April 1, 2006 at 11:05 a.m., and arrived at 11:06 a.m. at the scene of the subject accident. At that time, he recorded defendant Katoni’s statement that “she was traveling westerly on Ashford Avenue. She activated her right turn signal and began turning northerly into the driveway of 629 Ashford Avenue when her vehicle was struck by” plaintiffs motorcycle. Lieutenant Calabrese also testified as to plaintiffs version, as follows:
“The vehicle in front of him appeared to be stopping and going . . . , and instead of [plaintiff] going over the double-yellow line, he went to pass to the right. And then the [defendant Katoni’s] vehicle had suddenly turned in front of him to enter into a driveway, and they collided.”
At an examination before trial held on June 19, 2007, plaintiff Michael Morano testified that immediately before the accident, *467 he observed defendant Katoni’s vehicle “sitting on the double yellow line” and it “did not appear to be moving or have its blinker [sic] on ... I thought the vehicle was broke [sic] down in the street because I didn’t see a blinker or hazards or anything on. It was just sitting there, so I went to the right of the vehicle and the next thing I remember basically I was laying [sic] in a driveway.” At said deposition there was no testimony whatsoever by plaintiff regarding defendant Katoni’s alleged use of a cell phone at the time of the accident.
Later that day, on June 19, 2007, defendant Esther Katoni was deposed, and reiterated her version of the accident. She estimated that it was “after 10:30” when she reached the intersection, shortly before the accident. Although, at the time of the accident, she had in her possession a cellular phone, with Verizon being the carrier, she categorically denied using it at the time the collision occurred. According to her testimony, after the collision she exited the vehicle, observed the plaintiff on the ground and spoke with him, and then returned to her vehicle and called 911 on her cell phone. She also indicated that after the 911 call, she used her cell phone to call her husband.
The Instant Motions
It appears that on August 8, 2007, plaintiffs counsel served a subpoena duces tecum on Célico Partnership, doing business as Verizon Wireless, demanding that defendant Katoni’s cellular telephone records of April 1 and 2, 2006, be produced at said counsel’s offices on August 29, 2007. In late August, the defendants presented an order to show cause to this court for signature, seeking to quash the aforementioned subpoena. Pursuant to the rules of this Part, and in accordance with 22 NYCRR 202.7 and 202.12 (j), the court conducted a telephone conference with both counsel, and suggested that a preliminary in camera review of the subject cell phone records could render moot any unnecessary motion practice, were it to turn out, as it was the experience of this court in other cases, that the records did not reveal any phone calls whatsoever anytime near the time of the accident. At said conference, the court informed plaintiffs counsel, that even if the records reflected phone calls in that general time zone, it was the court’s position that without any testimony that defendant Katoni had been observed using a cell phone at the time of the accident, her records would not be discoverable, since without such a foundation, plaintiff s subpoena would be tantamount to a fishing expedition. Any *468 testimony as to the use of a cell phone after the accident would not satisfy that threshold. In response, plaintiff’s counsel disclosed that his client, in fact, was prepared to submit an affidavit satisfying this threshold.
Based on the telephone conference, a stipulation withdrawing defendants’ order to show cause, dated September 5, 2007, was “so ordered” by the court, which provided “that the plaintiffs subpoena is being quashed pending the in camera review by the Court determining if the cellular records of Esther Katoni dated April 1, 2006 are relevant or not.”
An in camera inspection was held on September 7, 2007, at which time the court found that it could not make a final determination whether the subject records were relevant, without more background. In an order dated September 10, 2007, the court designated a motion schedule, providing for the plaintiff to set forth the foundation for the enforcement of the subject subpoena, and for a cross motion by the defendants to quash and/or for a protective order.
In support of the instant motion to enforce the subpoena, an affidavit of the plaintiff, dated August 18, 2007, and notarized on September 20, 2007, was annexed as exhibit D, which stated the following:
“I observed Mrs. Katoni with an object in her hand held to her head while stopped in the middle of the roadway. I believed from seeing many other motorists in that position that she was talking on a cell phone or possibly retrieving messages from one. It also occurred to me that her vehicle was disabled and she was calling for assistance. Then, without warning or signal, Mrs. Katoni turned her vehicle into the path of my motorcycle causing the collision.”
Defendants contend in opposition to plaintiffs motion, and in support of their cross motion to quash, that no mention was ever made by plaintiff at prior discovery proceedings of defendant Katoni’s alleged use of a cell phone. Furthermore, they argue that the “newfound,” “self-serving” affidavit indicates that defendant Katoni was observed with what appeared to be a cell phone when her car was “stopped,” and therefore the subpoena should be quashed, “as there is not one iota of evidence that suggests that the defendant was operating her vehicle while on her cell phone and hence, her cell phone records are completely irrelevant for the prosecution or the defense of this case.”
*469 Legal Analysis
(1) Use of a Subpoena to Obtain Cell Phone Records
(a) In General
It is well settled that a subpoena duces tecum may not be used for the purpose of discovery or to ascertain the existence of evidence (People v Gissendanner, 48 NY2d 543, 551 [1979]; Matter of Murray v Hudson, 43 AD3d 936 [2007]; Oak Beach Inn Corp. v Town of Babylon, 239 AD2d 568 [1997]). Instead, its purpose is to compel the production of specific documents that are relevant and material to facts at issue in a pending judicial proceeding (see Matter of Terry D., 81 NY2d 1042 [1993]; Pernice v Devora, 238 AD2d 558 [1997]). When addressing a motion to quash a subpoena duces tecum, the standard to be applied is whether the requested information is “utterly irrelevant to any proper inquiry” (see Ayubo v Eastman Kodak Co., 158 AD2d 641, 642 [1990]). The burden of establishing that the requested records are utterly irrelevant is on the person being subpoenaed (see Gertz v Richards, 233 AD2d 366 [1996]).
(b) Notice Requirement and Special Circumstances
CPLR 3120, as amended in 2003, sets forth the procedure for the service of a subpoena duces tecum on a nonparty witness for the production of documents. Notwithstanding the amendments, CPLR 3101 (a) (4) remains in effect, and provides that when disclosure is sought from a nonparty, the nonparty shall be given notice stating the circumstances or reasons such disclosure is sought or required (see Velez v Hunts Point Multi-Serv. Ctr., Inc., 29 AD3d 104 [2006]). Nonparty discovery requires special circumstances, which are not established merely upon a showing that the information sought is relevant; rather, it must be demonstrated that the information sought cannot be obtained through other sources (see Moran v McCarthy, Safrath & Carbone, P.C., 31 AD3d 725 [2006], lv dismissed 8 NY3d 969 [2007]; Tannenbaum v Tenenbaum, 8 AD3d 360 [2004]).
In the instant matter, plaintiffs subpoena duces tecum to Célico Partnership, doing business as Verizon Wireless, was “facially invalid and unenforceable because it did not contain, and was not accompanied by, a notice setting forth the reasons why such disclosure was sought.” (Matter of Ehmer, 272 AD2d 540, 541 [2000].) Nevertheless, it would appear from the instant motion papers that to quash the subpoena on such technical grounds would be inappropriate, since at the time the subpoena was served, plaintiff had been informed by the defendants that *470 they did not possess the requested cell phone records, and, hence, a prima facie showing of special circumstances has been established (see Velez v Hunts Point Multi-Serv. Ctr., Inc. at 111; McDaid v Semegran, 16 Misc 3d 1102[A], 2007 NY Slip Op 51227[U] [2007]).
(c) Privacy Interest in Cell Phone Records and Standing to Quash
Plaintiff contends that he “seeks records which are in fact the business records of a nonparty. Defendant has no privacy right at issue and has no standing to successfully quash plaintiffs subpoena.” Although the plaintiff did not cite any specific authority in support of his position, the court is familiar with the seminal U.S. Supreme Court decision, Smith v Maryland (442 US 735 [1979]), which impacts on this issue. Relying on an “assumption of risk” analysis, the U.S. Supreme Court has repeatedly rejected the contention that a person retains constitutionally protectable privacy interests in personal information that he or she makes accessible to another person or otherwise places in the flow of commerce (see e.g. United States v Miller, 425 US 435 [1976] [relating to bank records]; also see Ronald L. Plesser and Emilio W Cividanes, Discovery and Other Problems Related to Electronically Stored Data and Privacy, 415 PLI/PAT 277 [Practicing Law Institute; Patents, Copyrights, Trademarks, and Literary Property Course Handbook Series Sept. 1995]). Accordingly, Smith held that individuals have no legitimate Fourth Amendment expectation of privacy in the numbers they dial on a telephone, and therefore the warrant-less use of a pen register did not constitute a “search” within the meaning of the Fourth Amendment. Based on these holdings, there are those who would argue that a depositor has no standing to challenge a subpoena issued against his bank, and, likewise, a cell phone subscriber would have no standing to quash a subpoena served on his provider in order to obtain cell phone records (see e.g. Matter of Selesnick [Axelrod], 115 Misc 2d 993 [1982]).
With regard to the specific issue at hand, the court adopts the ruling of Syposs v United States (181 FRD 224, 227 [1998]):
“While Smith held that a person may not have a reasonable expectation of privacy to avoid the need for a warrant under the Fourth Amendment for information created or maintained by a commercial entity, Smith did not hold that there is no interest in the confidentiality of such records which may be *471 protected against unregulated disclosure in response to civil discovery requests.”
In that case, the court conducted an in camera review of the subpoenaed cell phone records, since the court found that the movant cell phone subscriber had standing to challenge “unwarranted public disclosure” resulting from discovery in civil litigation (see Standing to Move to Quash Subpoena for Cellular Phone Records, 13 Fed Litigator [No. 12] 342 [Dec. 1998]; see also People v Weiss, 176 Misc 2d 496 [1998]). Similarly, in other civil cases, parties were afforded standing to object to the issuance of subpoenas against nonparties, based on personal privacy interests in the records sought (see e.g. Chazin v Lieberman, 129 FRD 97 [1990]; Sierra Rutile Ltd. v Katz, 1994 WL 185751, 1994 US Dist LEXIS 6188 [SD NY 1994]).
As in Syposs, the court held in another civil case that the proper procedure was an “in camera review” to preserve the privacy of telephone records:
“The fact that the telephone records contain relevant information and are not privileged does not mean, however, that they are subject to unlimited discovery. The records undoubtedly include substantial data not pertinent to any aspect of this litigation, including information about personal phone calls made . . . This raises significant privacy concerns.” (Sovereign Partners Ltd. Partnership v Restaurant Teams Intl., Inc., 1999 WL 993678, *4, 1999 US Dist LEXIS 17014, *10 [SD NY 1999].)
A few final words on the issue of privacy relating to cell phone records. As set forth above, the court has identified case law recognizing personal privacy interests in these records. In the opinion of this court, this conclusion is reinforced by legislation passed in the aftermath of Smith. Specifically, the Electronic Communications Privacy Act of 1986 responded to Smith by requiring a judicial order for pen registers, thereby providing a layer of protection to preserve the privacy of telephone numbers dialed (see Southern Bell Tel. & Tel. Co. v Hamm, 306 SE 70, 74-75, 409 SE2d 775, 778 [1991]; see also Patricia L. Bellia, The Future of Internet Surveillance Law: A Symposium to Discuss Internet Surveillance, Privacy and the USA Patriot Act: Surveillance, Records and Computers, Surveillance Law Through Cyberlaw’s Lens, 72 Geo Wash L Rev 1375, 1431 [Aug. 2004]; James X. Dempsey, Communications Privacy in the Digital Age: Revitalizing the Federal Wiretap Laws to Enhance Privacy, 8 Alb LJ Sci & Tech 65, 88 [1997]; Mark W. Pearlstein and *472 Jonathan D. Twombly, Cell Phones, EMail, and Confidential Communications: Protecting Your Client’s Confidences, 46 Boston Bar J 20 [Jan./Feb. 2002]). On February 8, 1996, Congress passed the Telecommunications Act of 1996, which further protected the privacy of customer information (see Fred H. Cate, Privacy and Telecommunications, 33 Wake Forest L Rev 1, 40 [1998]). More recently, on January 12, 2007, the President signed into law “The Telephone Records and Privacy Protection Act of 2006,” which establishes criminal penalties for the unauthorized disclosure of phone records. It would appear, that as a rejoinder to Smith, Congress has significantly enhanced the personal privacy interests of subscribers in their telephone records (see Christopher Slobogin, Subpoenas and Privacy, 54 DePaul L Rev 805 [2005]; Charles Weiss, The Coming Technology of Knowledge Discovery: A Final Blow to Privacy Protection?, 2004 U Ill JL Tech & Pol’y 253 [fall 2004]; Peter F. Kriete, Caller ID and The Great Privacy Debate: Whose Phone Call Is It, Anyway?, 97 Dick L Rev 357 [winter 1993]).
Notwithstanding the privacy interest of defendant Katoni in her cell phone records as a basis for her standing to cross-move herein to quash the subject subpoena, it would appear that CPLR 2303 (a) and 3120 (3) also afford her such standing. Pursuant to CPLR 3120 (3): “The party issuing a subpoena duces tecum . . . shall at the same time serve a copy of the subpoena upon all other parties,” and CPLR 2303 (a) provides: “so that it is received by such parties promptly after service on the witness and before the production of books, papers or other things.” This procedure is tantamount to statutory standing, since “[t]his allows a party to move for a protective order, CPLR 3103(a), or to move to quash the subpoena, CPLR 2304, in advance of the actual production by the nonparty, if that is the desired course.” (Patrick M. Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3120:12, at 231.)
Finally, even though the nonparty provider Célico Partnership, doing business as Verizon Wireless, has not sought herein to quash the subject subpoena served on it, nevertheless, it has been held that a “motion to quash may be made on behalf of a non-party witness by the witness or the witness’ lawyer, or by one of the parties or a party’s lawyer” (McDaid v Semegran, 16 Misc 3d 1102[A], 2007 NY Slip Op 51227[U], *3 [2007]; Matter of MacLeman, 9 Misc 3d 1119[A], 2005 NY Slip Op 51675[U] [2005]; Siegel, Practice Commentaries, McKinney’s Cons Laws *473 of NY, Book 7B, CPLR C2304:1, at 275). Accordingly, for all the reasons set forth above, defendant Katoni has standing to quash plaintiffs subpoena.
(2) The Proper Procedure for Discovery of Cell Phone Records, without Resorting to a Subpoena
Although we have established special circumstances, privacy, and standing in relation to the subject subpoena, it would appear that paragraph 10 of defense counsel’s affirmation, dated October 9, 2007, in support of the within cross motion, renders moot all the issues raised in reference to the subpoena:
“The defendant is in possession of the cell phone records the plaintiff seeks from the non-party but objects to producing same based on the fact that such records are utterly irrelevant to the plaintiffs prosecuting his case, particularly when he has failed to lay a proper foundation that such records are relevant.”
Based on this representation, plaintiff asserts in his reply that there is no longer any need to enforce the subject subpoena, for the following reason:
“Now, in paragraph 10 of defense counsel’s affirmation there is an admission that defendant is in possession of the cellular records that are sought by the plaintiffs subpoena and were previously demanded in discovery. Therefore the Court should order that the defendant immediately produce the records in her possession in response to plaintiff’s discovery demands and pursuant to the mandate of Article 31 of the CPLR.”
From the foregoing, the lesson to be learned is that, in accordance with case law, a subpoena duces tecum should not be used in lieu of discovery. The better practice, where the defendants indicate that they are not in possession of any of the demanded telephone records, is for the plaintiff to seek compliance, pursuant to CPLR 3124, by requesting authorizations from defendant Katoni for such records, without resorting to the extraneous procedure of serving a subpoena duces tecum upon a nonparty. Instead of moving to quash an unnecessary subpoena, defendant Katoni could have then easily challenged plaintiff’s discovery request for such authorizations, by seeking a protective order, pursuant to CPLR 3103.
*474 (3) Are the Requested Cell Phone Records Relevant to the Prosecution of the Action?
The standard to be applied in determining the discoverability of the requested cell phone records is whether they are “material and necessary” in the prosecution or defense of this action, which is to be interpreted liberally, and really amounts to whether they are relevant (see CPLR 3101 [a]; Allen v Crowell Collier Publ. Co., 21 NY2d 403, 406-407 [1968]).
On June 28, 2001, a law prohibiting the use of handheld cell phones while operating a motor vehicle was enacted in this state (Vehicle and Traffic Law § 1225-c, as added by L 2001, ch 69, § 1). Its legislative intent was the need to protect its citizens from the numerous motor vehicle accidents and serious injuries that result from the use of handheld cell phones (see People v Neville, 190 Mise 2d 432, 436 [2002]). In pertinent part, section 1225-c of the Vehicle and Traffic Law provides, at subdivision (2), as follows:
“(a) . . .no person shall operate a motor vehicle upon a public highway while using a mobile telephone to engage in a call while such vehicle is in motion.
“(b) An operator of a motor vehicle who holds a mobile telephone to, or in the immediate proximity of his or her ear while such vehicle is in motion is presumed to be engaging in a call within the meaning of this section. The presumption established by this subdivision is rebuttable by evidence tending to show that the operator was not engaged in a call.”
The unexcused failure to observe the standard imposed by statute constitutes negligence, and any evidence, whether direct or circumstantial, indicating such a violation would be relevant (see Martin v Herzog, 228 NY 164 [1920]).
Furthermore, there are many studies that contend that even the use of a “hands-free mobile telephone” to engage in a call while operating a motor vehicle may contribute to causing an accident, and would be relevant to the issue of negligence (see e.g. M.A. Recarte and L.M. Nunes, Mental Workload While Driving: Effects on Visual Search, Discrimination, and Decision Making, 9 J Experimental Psych: Applied [No. 2] 119-137 [2003]; D.L. Strayer, F.A. Drews and WA. Johnston, Cell Phone-Induced Failures of Visual Attention During Simulated Driving, 9 J Experimental Psych: Applied [No. 1] 23-32 [2003]; D.L. Strayer and J.A. William, Driven to Distraction: Dual-Task Stud *475 ies of Simulated Driving and Conversing on a Cellular Telephone, 6 Psychol Sci [No. 12] 462-466 [2001]). As an aside, there are those who trace the admonition against distracted driving all the way back to the Biblical verse, Genesis 45:24: “Do not become agitated on the way” (see Tractate Taanit 10b). Unfortunately, there are those who even “text message” while driving, but this decision deals only with the potential hazards of talking on a cell phone while operating a vehicle.
On the other hand, as indicated earlier, it is the opinion of the court that the mere fact that a defendant was in the possession of a cell phone at the time of an accident, without any witness testimony as to it being used at that time, would not entitle the plaintiff to said defendant’s cell phone records, since such a discovery request would amount to nothing more than a fishing expedition (see Carpio v Leahy Mech. Corp., 30 AD3d 554 [2006]; Auerbach v Klein, 30 AD3d 451 [2006]).
However, in the instant matter, plaintiff has submitted an affidavit indicating that he observed defendant Katoni “with an object in her hand held to her head” immediately before the accident, which gave him the impression that she was using a cell phone to call for assistance. Under these circumstances, plaintiff would be entitled only to that portion of defendant Katoni’s Verizon cell phone records, which would disclose calls transmitted or received by her on April 1, 2006, limited to the estimated time of the subject accident. Such limited disclosure, obtained via in camera review, would protect privacy, while revealing any calls made or received within the estimated time zone in close proximity to the accident, and would be relevant to the issue of negligence (see Klein v McDermott, 6 AD3d 664 [2004]; Newman v Vetrano, 283 AD2d 264 [2001]; Silber v Motorola, Inc., 274 AD2d 511 [2000]; see also Scianni v Suriano, 2007 WL 506206 [NJ Super Ct, App Div 2007]; Butts v United States, 822 A2d 407 [DC App 2003]; Hiscott v Peters, 324 Ill App 3d 114, 754 NE2d 839 [2001]). At her deposition of June 19, 2007, defendant Katoni estimated that it was “after 10:30” a.m., immediately preceding the accident. Police Lieutenant Carl Calabrese testified at his deposition that the “desk officer” who fielded the 911 call, reporting the subject accident, received said call at 11:05 a.m., at which time Calabrese was dispatched, and he arrived at the scene of the accident at 11:06 a.m. Accordingly, upon in camera review of defendant Katoni’s Verizon cell phone records, the court discloses that on April 1, 2006, at 9:47 a.m., a call was placed that lasted one minute; at 10:50 a.m., a call was placed for an *476 interval of two minutes; at 10:52 a.m., a call was placed which lasted three minutes; and at 11:06 a.m., a call was placed which lasted one minute. The defendants are hereby directed to serve plaintiff, within 20 days of the date of service of a copy of this order together with notice of entry, with a copy of that portion of the aforementioned cell phone records, indicating which specific telephone numbers were called from 9:47 a.m. to 11:06 a.m. on April 1, 2006. In accordance with defendánt Katoni’s deposition testimony, it would appear that the cell phone number listed in her records as the one to which she placed a call at 11:06 a.m., matches the cell phone number of her husband. Thus, based on the deposition testimony of Lieutenant Calabrese and the parties, the court has disclosed the relevant cell phone numbers within the general time frame of the subject accident.
Conclusion
For all the reasons mentioned above, the court grants plaintiffs motion, pursuant to CPLR 3124, to enforce discovery, to the extent indicated herein, and likewise, grants defendants’ cross motion, pursuant to CPLR 3103, for a protective order, in part. In all other respects, the motion and cross motion are denied.