OPINION OF THE COURT
Daniel P. Conviser, J.
Statement of Facts
The defendants are charged with manslaughter in the second degree and related charges arising from the collapse of a crane on East 91st Street in Manhattan on May 30, 2008. The collapse killed the operator of the crane and a man working on the street below and seriously injured a third person. The People allege that the collapse was caused by a defective weld in the crane turntable. Defendant New York Crane & Equipment Corporation owned the crane. J.F. Lomma Inc. is a related company and James Lomma is the principal of that company. A fourth defendant, Tibor Varganyi, New York Crane’s head mechanic, previously pleaded guilty to criminally negligent homicide and is awaiting sentence.
On November 16, 2011 (long after the indictment in this case was filed), the People served a subpoena duces tecum on Citibank, N.A., seeking the personal financial records of defendant James Lomma for the period between September 1, 2007 and March 31, 2008. The People did not provide notice to the de *349 fendants or the court regarding that subpoena. Upon learning that the subpoena had been issued, the defendant asserted that the subpoena should be quashed, first, because the People did not provide notice of the subpoena to the defendant and additionally because it was not calculated to obtain relevant evidence. This decision addresses the defendant’s motion.
The People argue that notice of a third-party subpoena need not be provided to a defendant and additionally assert that the defendant has no standing to move to quash any such subpoena. Given the People’s position on the standing issue, they also initially declined to provide any detailed explanation for why they believed a subpoena of the defendant’s personal financial records was proper. Generally, however, the People allege that the deaths and the serious physical injury in this case were caused by a failure of a weld in the crane’s turntable. The People further allege that defendant Lomma had previously had the turntable repaired and that in effectuating this repair he ordered a replacement bearing from a Chinese company which agreed to provide the bearing “for nearly half the price, and in less than half the time” as estimates he had received from American companies.[1] In summarizing the People’s theory of this case in ruling that the indictment was sufficient, Justice Thomas Farber noted that a jury would be entitled to find with respect to criminal negligence that the “defendants, in order to save money and time, had a critical part manufactured by a company that they clearly should have known could not manufacture the part to acceptable standards.”[2] Since, according to the People, the defendants’ crimes arose out of “a desire to save money” and since the Citibank subpoena requested personal financial records for only a seven-month period most relevant to defendant James Lomma’s alleged crimes, the People asserted in the instant motion that the subpoena on its face was proper.[3]
 For the reasons stated below, the court holds that (i) a party to a criminal proceeding is not required to serve a third- *350 party subpoena duces tecum on an opposing party; and (ii) a criminal defendant has no standing to move to quash a subpoena duces tecum issued by the People to a third-party bank for the defendant’s banking records.[4]
Conclusions of Law
Subpoena Notice Requirement
It is generally assumed that when the People lawfully issue a subpoena duces tecum to a third party in a criminal case, the People need not provide notice of that subpoena to a defendant. The defendant in this motion, however, asserted that a plain reading of the Criminal Procedure Law and the Civil Practice Law and Rules requires that any third-party subpoena duces tecum (other than one issued by a grand jury) must be served on all parties in a criminal action. The court agrees that the language of these statutes requires such service. The legislative history of the statutes, however, clearly indicates that the Legislature did not intend to impose such a service requirement in criminal cases.
The authority of prosecutors to issue subpoenas in criminal actions is contained in article 610 of the Criminal Procedure Law. Prosecutors and defense attorneys are granted the authority to issue subpoenas by CPL 610.20. The service requirements for such subpoenas are provided by CPL 610.40. That statute provides: “A subpoena may be served by any person more than eighteen years old. Service must be made in the manner provided by the civil practice law and rules for the service of subpoenas in civil cases.”
The service requirement which the defendant asserts is applicable by virtue of this mandate is contained in CPLR 2303 (a). A 2003 statute enacted that service requirement by adding the following sentence to the CPLR:
“A copy of any subpoena duces tecum served in a pending action shall also be served, in the manner set forth in rule twenty-one hundred three of this chapter, on each party who has appeared in the action so that it is received by such parties promptly after service on the witness and before the produc *351 tion of books, papers or other things.” (L 2003, ch 547 [hereinafter the 2003 amendment].)
CPL 610.40 was enacted in 1970 as part of what at the time was the new Criminal Procedure Law which replaced the former Code of Criminal Procedure. The author of the Practice Commentaries for CPL 610.40, Peter Preiser, explains (in accordance with the plain meaning of the statute) that the Criminal Procedure Law was explicitly designed to conform the subpoena service requirements in criminal cases to the requirements in civil proceedings, including the statutory section at issue here: “This section replaced archaic provisions of the old Code of Criminal Procedure by making the manner of service of a subpoena in a criminal proceeding conform to the service of subpoenas in civil cases as prescribed by the CPLR (see e.g., CPLR § 2303).” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 610.40, at 390 [2009 ed].) Thus, in 1970, the Legislature mandated that the subpoena service requirements of the CPL conform to the provisions of the CPLR, which at that time did not require notice of a third-party subpoena duces tecum to an opposing party. Then, in 2003, the service requirements of the CPLR were changed to create such a requirement. But no modification was made to the CPL, which continued to cross-reference the (now amended) CPLR provision.
It is clear from a review of the legislative history of the 2003 amendment that the Legislature was focused on civil, not criminal, proceedings.[5] The amendment was the result of a proposal made by the Committee on Civil Practice Law and Rules of the New York State Bar Association (hereinafter the State Bar CPLR Committee), a body charged with proposing changes to statutes regulating civil rather than criminal practice.[6] The text of the 2003 amendment, however, in the court’s view, clearly applied (by virtue of the cross-reference in CPL 610.40) to criminal proceedings.
In 2004, however, the Legislature amended the 2003 subpoena service requirement. The amendment substituted the words “civil judicial proceeding” for the word “action” in the two *352 places where the word “action” appeared in the subject sentence. (L 2004, ch 26 [hereinafter the 2004 amendment].) The memorandum from the State Bar CPLR Committee explained that the purpose of this amendment was to make clear that the 2003 service requirement applied to civil proceedings, not criminal actions:
“CPLR 2303(a) was amended in 2003 (Chapter 547), to require that a party serving a subpoena duces tecum, serve a copy upon every other party pursuant to CPLR 2103 at a time prior to the production of the items requested. The amendment enacted was proposed by the New York State Bar Association to ensure that, in civil actions, items requested by the subpoena were properly subject to subpoena power and to allow opposing parties to test the validity of the subpoena by motion to the trial judge before such items were produced. The proposal was originally meant to apply to civil actions only; however, there is some concern that its present wording might be interpreted to require that subpoenas duces tecum in criminal matters also be subject to the notice requirements.
“This amendment makes clear that, as originally intended, the 2003 change to CPLR 2303(a) only apply [szc] to civil actions and proceedings.”[7]
That intention is also reflected in the Senate bill memorandum, although that memo contains an obvious typographical error in which the word “criminal proceedings” in the brief “justification” section of the memorandum should apparently read “civil proceedings”: “JUSTIFICATION: To clarify that the changes made by Ch. 547/L 2003 apply to criminal proceedings only. This bill adds a phrase to CPLR 2003 and is offered to reaffirm that the changes made by Chapter 547 govern only civil judicial proceedings.”[8] The Senate bill memorandum also noted that the amendment was intended to correct a “technical error” in chapter 547 of the Laws of 2003. (Senate Introducer’s Mem in Support, Bill Jacket, L 2004, ch 26.)
In the court’s view, the plain meaning of both the 2003 and 2004 amendments continue to provide that the subpoena duces tecum notice requirement applies in criminal cases, at least *353 with respect to non-grand jury subpoenas duces tecum.[9] CPL 610.40 requires that the service requirements for subpoenas duces tecum in criminal cases conform to the requirements for the “service of subpoenas in civil cases.” Thus, whether the service requirements of CPLR 2303 (a) concern an “action” (as the 2003 chapter did) or a “civil judicial proceeding” (as the 2004 amendment provided) those provisions on their face clearly apply to criminal proceedings by virtue of CPL 610.40. Indeed, the language of the 2004 amendment made the 2003 amendment’s applicability to criminal proceedings more explicit, by more closely conforming the language of the CPLR to the CPL (“civil cases” [CPL] versus “action” [CPLR] in the 2003 amendment, but “civil cases” [CPL] versus “civil judicial proceeding” in the 2004 amendment).[10]
“Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning.” (People v Kisina, 14 NY3d 153, 158 [2010], quoting Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91 [2001]; Kramer v Phoenix Life Ins. Co., 15 NY3d 539, 550 [2010].) “The Legislature is presumed to mean what it says, and if there is no ambiguity in the act, it is generally construed according to its plain terms.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94, Comment; see also Simon v Usher, 17 NY3d 625, 628 [2011].)
The particular statutory construction issue here, moreover, the amendment of one statute which then changes the meaning *354 of a second statute without that second statute’s amendment, is a common occurrence for which particular statutory construction rules apply: “When the general law (not a specific statute) relating to some subject is incorporated into a particular statute, upon changes being made in such general law, the particular statute is deemed amended correspondingly.” (Statutes § 197, Comment.) The Legislature determined in 1970 that the rules for the service of process in criminal cases would be subject to the “rules for the service of subpoenas in civil cases.” The authors of the Criminal Procedure Law undoubtedly understood that this body of civil law would evolve over time. They determined to conform the service requirements in criminal cases to those evolving rules.
Despite these provisos, however, the single most important principle of statutory construction is that courts should attempt to effectuate the intent of the Legislature. (Pultz v Economakis, 10 NY3d 542, 547 [2008]; Matter of Crucible Materials Corp. v New York Power Auth., 13 NY3d 223, 229 [2009], rearg denied 13 NY3d 927 [2010].) In this case that intent is clear. The text and legislative history of the 2004 amendment indicate that the Legislature did not intend the third-party subpoena duces tecum service requirement to apply to criminal proceedings.
There are certainly significant policy arguments in favor of applying this requirement to criminal cases. Indeed, it was concerns about the ability of a party to move to protect personal financial records, like those at issue in the instant motion, which in part motivated the 2003 amendment:
“This proposal is designed to ensure fundamental fairness and due process in connection with the issuance of a subpoena in a pending action by requiring service of a copy of the subpoena duces tecum on the other parties to the action . . . Often, these subpoenas are directed to a party’s medical records, an employment file or other financial records. A subpoena of such materials (medical, hospital or personnel records) compels production even in the absence of a signed authorization. So records relating to a party could be perused without giving the party an opportunity to object to their production via subpoena . . . Hence, there is an opportunity for *355 serious abuse.” (See Assembly Mem in Support, Bill Jacket, L 2003, ch 547.)[11]
These considerations apply with at least as much force in a criminal case as they do in a civil proceeding. A third-party subpoena duces tecum service requirement in criminal cases would obviously create additional work for parties. But such obligations would be limited. The requirement would only apply to subpoenas where documents were sought (a subpoena duces tecum). Such subpoenas duces tecum are only proper, moreover, for the limited purpose of obtaining identifiable evidence, rather than engaging in wide-ranging discovery to determine whether relevant evidence might exist. (Matter of Terry D., 81 NY2d 1042, 1044 [1993].) Thus, the number of such subpoenas should be limited. There may be cases where a party in a criminal proceeding has a legitimate need to shield the existence of a subpoena duces tecum from an opposing party. But courts would certainly be entitled to consider applications to shield such subpoenas in appropriate cases. There is no argument in this case, however, that the Legislature acted unconstitutionally when it provided important due process rights to parties in civil proceedings but not criminal ones. Parties in criminal cases are not entitled to notice when a subpoena duces tecum is served on a third party.
Defendant’s Standing to Move to Quash the People’s Subpoena
The clear weight of authority in this state has long held that a party has no standing to move to quash a subpoena issued to a third-party bank for that party’s bank records, at least in a criminal case. That rule is based on the seminal decision of the United States Supreme Court in United States v Miller (425 US 435 [1976]). In that case, the Court held that a criminal defendant had no Fourth Amendment interest in his personal bank records which the government had obtained by a subpoena which the defendant asserted was improper. The Court held that personal banking records are business records of a bank to which a depositor has no legitimate expectation of privacy.
The courts of this state, under state law, have reached the same conclusion. (See e.g. Matter of John Doe Corp. I v Blumenkopf, 118 AD2d 279 [3d Dept 1986] [petitioner corporations had no standing to move to quash grand jury subpoena duces tecum issued by State Organized Crime Task Force to third-party bank *356 for petitioners’ bank records]; People v Doe, 96 AD2d 1018, 1019 [1st Dept 1983] [holding that a natural person has no standing to move to quash a grand jury subpoena for his personal banking records in a criminal case; “(b)ank records, although they may reflect transactions between the bank and its customers, belong to the bank. The customer has no proprietary or possessory interests in them”]; see also People v Crispino, 298 AD2d 220 [1st Dept 2002], lv denied 99 NY2d 627 [2003]; Matter of Congregation B’Nai Jonah v Kuriansky, 172 AD2d 35 [3d Dept 1991], appeal dismissed 79 NY2d 895 [1992]; People v Weiss, 176 Misc 2d 496 [Sup Ct, NY County 1998] [same].)
This issue was explored in a very thoughtful opinion by the First Department in Matter of Norkin v Hoey (181 AD2d 248 [1992]). In that case, the Court acknowledged the significant privacy interests which depositors have in their bank accounts and the obvious fact that banks have little incentive to contest a subpoena for a customer’s bank records. The Court indeed outlined the “underlying discomfort with the facial unfairness of depriving a bank customer of any recourse, including standing, for disclosure of financial information concerning the customer’s personal bank accounts which are widely believed to be confidential.” (181 AD2d at 253.)
The Norkin Court nevertheless held that a closely held corporation had no standing to move to quash a grand jury subpoena seeking records concerning a loan the bank had made to the corporation, records the corporation had described as “personal or private financial records.” (Id. at 249.) One significant difference between the records at issue here and those in Norkin is that the Norkin records concerned a loan transaction, rather than the records of a bank depositor. The Norkin Court acknowledged that records like those at issue in the instant matter might be subject to a greater degree of confidentiality protection than the bank loan records at issue in Norkin. The Court, however, announced no rule which would provide greater privacy rights to records like those existing here.
The Norkin decision also noted that there had been decisional case law suggesting that a bank depositor might have standing to contest a subpoena of his personal banking records in a civil proceeding. The Court held, however, that “the overwhelming weight of authority in this State holds that a bank customer is without standing to challenge a third-party subpoena, particularly where incidental to a government entity’s investigatory activities.” (Id. at 253.)
*357 In support of the instant motion, the defendant also relies on a number of trial court cases. (See e.g. Daniels v JP Morgan Chase Bank, N.A., 2011 NY Slip Op 32492[U] [Sup Ct, Nassau County 2011]; Morano v Slattery Skanska, Inc., 18 Misc 3d 464 [Sup Ct, Queens County 2007].) In Daniels, a civil proceeding decided just five months ago, the court noted that a depositor’s motion to quash a subpoena issued by a third-party bank had indeed been considered by a magistrate judge in that case. The court nevertheless, however, noted that “a depositor’s standing to challenge a subpoena seeking third-party bank records, and accordingly, the existence of an underlying privacy interest in those records, has not been affirmatively declared in this State.” (2011 NY Slip Op 32492[U], *6.) In Morano, the court held that a party in a civil proceeding had a cognizable privacy interest in his personal cell phone records and thus had standing to move to quash a subpoena duces tecum issued to a third party for those records. The instant matter, however, is obviously distinguishable from Morano both because the instant matter is a criminal proceeding and because many of the considerations which led the court to find a privacy interest in cell phone records in Morano do not exist for banking records. (See Morano, 18 Misc 3d at 469-474.)
The Third Department found that a party had standing to move to quash a subpoena issued to a third-party bank in a civil proceeding in Matter of Goldberg v Axelrod (104 AD2d 520 [3d Dept 1984], lv denied 64 NY2d 602 [1984]). That case, however, involved what the Court held was a subpoena which had been unlawfully issued by an administrative agency and was grounded on a right the Court found existed by statute. The Goldberg decision, moreover, was a civil case, has not been followed in subsequent Third Department opinions and to the extent it might still be authoritative is contrary to the First Department’s holdings in Norkin and Crispino. (See Oncor Communications v State of New York, 165 Misc 2d 262, 264 n 3 [Sup Ct, Albany County 1995], affd 218 AD2d 60 [3d Dept 1996].)
In the view of this court, a party, whether in a civil or a criminal proceeding, should have a right to move to quash a subpoena duces tecum issued to a third-party bank for his personal banking records. A bank obviously may have no incentive to protect a depositor’s banking records. Those incentives might vary, moreover, depending on the relationship a depositor had with a bank or the amount of money a bank was holding for a customer, factors which have no necessary correlation with *358 either the merits of a subpoena or the privacy interests of a depositor.
Banking records often contain sensitive personal financial information. The considerations which led the Norkin Court to express concerns about the state of New York law on the subject, moreover, have only become more significant during the 20 years since that case was decided. The ever increasing use of computers to make and record banking transactions has made swift compliance with subpoenas for banking records ever easier. Depositors also, with the click of a mouse, now routinely transmit their most private financial information to banks in an instant.
The easy flow of such commerce is facilitated by the privacy protections which depositors naturally assume their password-protected personal banking information possesses. Yet the law effectively provides no clear right for those privacy interests to even be asserted, much less recognized, at least with respect to an opposing party, any time a person is a party to a civil or criminal proceeding or is being investigated by any one of a myriad of government agencies. As the Second Circuit quipped in a 1989 decision in which it analyzed the scope of a possible action under New York law for the breach of a confidential relationship between a banker and a depositor: “any customer who has ever tried to get his or her own account balance over the phone from an obdurate bank employee would be quite surprised to learn that the same information could be freely disclosed to a law enforcement agency.”[12] Justice Brennan, dissenting in Miller in 1976, outlined these concerns in quoting a unanimous 1974 decision of the California Supreme Court holding that depositors did have a privacy interest in their banking records:
“It cannot be gainsaid that the customer of a bank expects that the documents, such as checks, which he transmits to the bank in the course of his business operations, will remain private, and that such an expectation is reasonable . . .
“It is not the right of privacy of the bank but of the petitioner which is at issue . . .
*359 “For all practical purposes, the disclosure by individuals or business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to participate in the economic life of contemporary society without maintaining a bank account. In the course of such dealings, a depositor reveals many aspects of his personal affairs, opinions, habits and associations. Indeed, the totality of bank records provides a virtual current biography.” (425 US at 448, 450, 451 [Brennan J., dissenting], quoting Burrows v Superior Court, 13 Cal 3d 238, 243-248, 529 P2d 590, 593-596 [1974].)
The California Supreme Court decision quoted by Justice Brennan in dissent in Miller also noted that the advent of new “sophisticated instruments” like “photocopying machines” had increased the ability of the government to intrude into the private affairs of citizens. The law, the decision asserted, had to “keep pace with the perils created by these new devices.” (425 US at 451-452.) As Justice Alito astutely observed in concurring in the judgment in last week’s landmark decision of the United States Supreme Court that the placement of a GPS device on a vehicle constitutes a search within the meaning of the Fourth Amendment: “In the pre-computer age, the greatest protections of privacy were neither constitutional nor statutory, but practical.” (United States v Jones, 565 US —, —, 132 S Ct 945, 963 [Jan. 23, 2012].) In the wake of the 1976 Miller decision, Congress enacted the Right to Financial Privacy Act (12 USC §§ 3401-3422) which provides individuals with a statutory right to move to quash a subpoena issued by a federal government agency for a person’s banking records. No similar protection exists under New York State law.
This court is obviously bound to follow the law which is in effect in New York in 2012. That law may be slowly evolving. It has not yet evolved, however, to the point where the courts of this state have recognized a privacy interest of a criminal defendant in his or her personal banking records sufficient to provide standing to move to quash a subpoena. For that reason, the court holds that the defendant has no standing to move to quash the People’s subpoena to Citibank, N.A. Since the defendant has no such standing, it would also be improper for this court to consider the defendant’s additional arguments to quash the People’s subpoena. (See Norkin, 181 AD2d at 250 [“(a)bsent standing, the issue of relevance raised by petitioners (who *360 moved to quash the respondent’s subpoena) is never reached”].)[13]
Defendant’s Motion for Protective Order with Respect to Financial Records
In the event this court denied the defendant’s motion to quash, the defendant moved for an order limiting the disclosure of the subpoenaed material to the People and the defendant. The People do not oppose that application and that application is granted. Granting this application would not run afoul of the standing rules outlined here. But it would go part of the way towards addressing the privacy issues which have caused concerns for this and other courts. To the extent the subpoenaed material results in evidence being admitted at trial the court anticipates that such trial evidence would not be shielded from public disclosure.
Conclusion
The issues addressed in the instant decision obviously do not concern the merits of the serious charges which have been made in this case. Those issues do not even concern the merits of the People’s subpoena. They concern the proper parameters of due process, the right to notice and the opportunity to be heard.
A party to a criminal proceeding, in the court’s view, should certainly be entitled to know if an opposing party has subpoenaed his personal financial records. Defendants in a criminal proceeding should also have a right to be heard when their personal financial records are sought. The fact that New York still has no clear rules which provide for either such notice or standing, in the court’s view, wrongfully deprives defendants of significant due process rights which would be easy to implement and result only in the opportunity for a neutral magistrate to review whether a subpoena duces tecum had been lawfully issued. Justice Sotomayor, concurring in the judgment in Jones last week outlined why the law’s assessment of the degree of privacy which persons are entitled to must evolve to meet the *361 realities of contemporary life with respect to issues like those raised here:
“[T]he Government’s unrestrained power to assemble data that reveal private aspects of identity is susceptible to abuse. . . .
“More fundamentally, it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks” (Jones, 565 US at —, —, 132 S Ct at 956, 957 [citations omitted]).
“Those who disclose certain facts to a bank or phone company for a limited business purpose need not assume that this information will be released to other persons for other purposes.” (Id., quoting Smith v Maryland, 442 US 735, 749 [1979, Marshall, J., dissenting].)
The subpoena for the defendant’s personal financial records in this case may well reflect a completely meritorious direction for identifiable relevant evidence. On the other hand, if the prosecutors in this case had determined to simply embark on a fishing expedition, with no justification at all (a motivation this court does not ascribe to the People in this case), there would be little to effectively deter them from doing that either. Criminal defendants certainly have an interest, in fact, in the privacy of their personal financial records. But that interest is not yet recognized by the laws or the courts of this state.

. See People’s affirmation in response to defendant’s motion to compel and quash, Dec. 30, 2011 (hereinafter People’s affirmation), 114.

. (Sept. 19, 2011, index No. 852/10, at 14 [unreported decision].) The evidence before the grand jury and the competing claims of the parties in this case are extensive and complex and are not summarized here. The gist of the People’s case (which is vigorously disputed by the defendants) is recounted only to provide some context for understanding why the People asserted that it was proper to subpoena the defendant’s personal banking records.

. See People’s affirmation 11 26.

. The court ruled on these issues and a number of related issues in an oral ruling on January 19, 2012 and a written order on January 23, 2012 with an indication that a written decision and order containing more detailed conclusions (the instant decision and order) would follow.

. The Bill Jacket for this chapter law includes four documents: the Assembly bill memorandum, a “Legislation Report” from the New York State Bar Association supporting the bill, a brief letter from Office of Court Administration counsel Michael Colodner in support of the legislation and a brief note from the State Division of the Budget, indicating that the bill had no significant budget implications. Inquiries to the Senate and Assembly indicate that there was no floor debate on the bill.

. See Legislation Report No. 75, Sept. 8, 2003, Bill Jacket, L 2003, ch 547.

. Legislation Report No. 79 of New York State Bar Association Committee on Civil Practice Law and Rules, Sharon Stern Gerstman, Esq., Feb. 5, 2004, Bill Jacket, L 2004, ch 26.

. Senate Introducer’s Mem in Support, Bill Jacket, L 2004, ch 26.

. The defendant made no argument that the People would be required to serve a grand jury subpoena duces tecum on a prospective defendant. Grand jury proceedings are secret and grand jury evidence may not be disclosed to third parties without a court order. (CPL 190.25 [4].) Requiring the disclosure of grand jury subpoenas to the targets of grand jury investigations could jeopardize ongoing law enforcement investigations in many cases. The CPLR service requirement at issue here, moreover, only applies to “each party who has appeared” in an action. (CPLR 2303 [a].) Targets of a grand jury proceeding who have not yet been charged in an accusatory instrument are not parties to that proceeding.

. The court does not know why the 2003 and 2004 amendments were drafted as they were. The one explanation which has occurred to the court is that the civil practice experts who drafted the two amendments may simply have been unaware of the provisions of CPL 610.40. The court itself, in its initial bench ruling, came to what it later determined was the wrong conclusion on this issue when it initially determined, in accordance with the plain meaning of the CPL and the CPLR, that a party in a criminal case was required to serve a third-party subpoena duces tecum (other than a grand jury subpoena duces tecum) on an opposing party. The court reversed that initial bench ruling, sua sponte, in a brief written order on January 23, 2012, when it became aware of the legislative history of the 2004 amendment.

. The arguments in the Assembly bill memorandum echoed the arguments made by the State Bar CPLR Committee, which, as noted, supra, drafted the amendment.

. (Young v United States Dept. of Justice, 882 F2d 633, 643 [1989].) In Young, the Second Circuit noted that at the time of its decision, New York’s courts and Legislature had been “rather conservative in recognizing causes of action for damages in the privacy field” and restricted the right to privacy under the law in many respects, including the subpoena standing issue discussed here. (88 F2d at 641-644.)

. Courts doubtless have a degree of inherent authority to prevent documents obtained through an obviously improper subpoena from being transmitted to a party. (See People v Natal, 75 NY2d 379 [1990], cert denied 498 US 862 [1990] [district attorney subpoenas are a process of the court, not the district attorney’s office].) Here, however, the People have proffered a color-able basis for their subpoena and no valid objection has been made. Given these facts, the court does not believe it would be appropriate to prevent the People from receiving these materials. Such inherent authority is also no substitute for the due process inherent in an adversarial proceeding.