OPINION OF THE COURT
Charles J. Markey, J.
The significant legal issue in this civil action, brought by the plaintiffs’ motion to compel discovery, is the production of a video surveillance tape of an accident or incident that occurred in a store or in some premises and related records, notes, and information. No examinations before trial have begun because the parties have taken starkly different positions on whether the video surveillance tape and the related information is subject to discovery, and, even if so, at what stage of the proceedings must they be turned over to plaintiffs’ counsel.
Plaintiff Kathleen Savino alleges that she sustained a fracture and other serious physical injuries as a result of a slip and fall, reportedly caused by the defendant’s negligence, on January 14, 2007, at a Waldbaum’s supermarket, located at 156-01 Cross Bay Boulevard, in Howard Beach, Queens County, in New York City. Defendant, the Great Atlantic and Pacific Tea Co., Inc., is the owner of several well-known supermarket chains operated throughout the eastern coast of the United States, including Waldbaum’s, A & P, Pathmark, Food Emporium, Super Fresh, and Food Basics.
The video surveillance footage involved in this case is believed to show the actual trip and fall and the surrounding circumstances. Many stores and enterprises set up video surveillance to reduce the number of thefts and shoplifting by both employees and customers. The benefit of having a camera record the activities of customers and employees can be of value to the bottom line of a store’s or enterprises’ profitability.
At the same time, a store, shop, warehouse, or enterprise should not be given the sole discretion of whether to surrender or share such video surveillance tape at its option. Such control is contrary to any notion of fair play. A video surveillance tape might contain the only crucial evidence for determining which side is telling the truth. In similar fashion, in many activities of professional sports, leagues are permitting video cameras as an aid to umpires or referees in determining whether a baseball *794 went foul or was in fair territory or whether a hockey puck actually went past the line at the goalie’s net.
The important, even vital, often indispensable, uses of a video surveillance tape during litigation, both criminal and civil, are plentiful. Such a videotape can show whether a customer actually fell and what may have caused the alleged act of liability, if any. A videotape can identify acts of trespass and graffiti and help law enforcement in prosecuting actions that would not have been possible without such evidence. A video surveillance tape can also depict an assault on a business invitee by a store employee or by another customer and identify the instigator and whether someone struck back solely in self-defense. A video surveillance tape might also depict whether someone was fleeing from a store because of an act indicating a consciousness of guilt or whether because actually urged to do so by others fearing further violence. A video surveillance tape might also be probative in determining whether police had probable cause to effectuate an arrest.
In a fast developing technological age, where cell phones and texting devices are used handily not only to talk and send messages, but also to photograph, the usefulness of a video surveillance tape to help get at the truth of a disputed factual issue is undebatable and undeniable.
Although the undersigned respects the vigorous advocacy of defense counsel, defendants cited no case in its written papers or at the oral argument before the court on October 23, 2008, that would justify not providing plaintiffs’ counsel with a DVD of the entire incident. This court’s independent legal research did unearth one such case: Rankin v Waldbaum, Inc. (176 Misc 2d 184 [Sup Ct, Nassau County 1998]). Rankin presents strikingly similar facts of a video surveillance tape depicting a slip and fall at a supermarket of the same chain. The court in Rankin, held that the surveillance videotape was discoverable, but that the supermarket would not be required to furnish the tape to plaintiff’s counsel until after her examination before trial.
In reaching for such a result, the Supreme Court, Nassau County, in Rankin, relied upon the Court of Appeals case in DiMichel v South Buffalo Ry. Co. (80 NY2d 184 [1992]). In that case, the state’s highest Court unanimously held that surveillance tapes made of the plaintiff in a litigation, of the type that would suggest that a plaintiff was faking or exaggerating his or her injuries, were not discoverable until the plaintiff had been *795 deposed. The Court of Appeals, in fashioning such relief, feared that a plaintiff could tailor his or her testimony if presented with the tape prior to his or her sworn examination before trial. The court in Rankin engrafted the logic of the Court of Appeals decision in DiMichel to videotapes showing not simply “a regular day in the post-litigation life of the plaintiff,” but the actual occurrence itself.
The type of “day in the life” videotape is routinely filmed by an insurance adjuster or company to show, with resonating probative and sensational value, that despite a plaintiffs claim of being physically incapacitated, challenged, or limited in some way as a result of defendant’s negligence, that even after the filing and service of a summons and complaint, the plaintiff was hearty enough to perform tasks contrary to his or her claims of pain, suffering, and debilitation. Such videotaped evidence can undermine a plaintiffs entire case on damages.
That type of “day in the life of’ videotape is a far cry from the surveillance tape at issue here. The videotape at issue in the case at bar shows the actual events connected to the alleged act of negligence. A surveillance videotape is the best evidence of whether an alleged act of criminality or negligence occurred or did not occur, depicting the panoply of circumstances surrounding the actual event: did the customer actually fall as a result of a broken bottle of ketchup or from a leaky, unrepaired roof? Did the customer or business invitee steal a package of meat or a pair of pliers? Did the business invitee actually get assaulted by a store employee or another customer?
The holding by the court in Rankin fails to take into consideration that the policy considerations that were the backbone of the Court of Appeals decision to retard or delay the production of the “day in the life of’ videotape to opposing counsel have no applicability to a surveillance videotape that is the best proof of whether or how an accident occurred or whether or not a crime was committed.
Just recently, the federal court in Williams v Castro (2008 WL 4513568 [WD Tex, Sept. 26, 2008]), a civil action against correction officers for alleged acts of brutality and use of excessive force, stated: “Clearly, any videotapes recording any part of the events which form the basis for this suit should have been produced” (2008 WL 4513568, *1). The court mandated their production in full to the plaintiff in less than three weeks.
In the present case, defense counsel next argue, without going into any detail, that they believe that the plaintiff Kathleen *796 Savino may have misrepresented the cause of her injuries, unbeknownst to her counsel. At oral argument, Daniel E. O’Neill, Esq., for defendant, stated, without elaboration, his belief that plaintiff Kathleen Savino’s fall or injuries resulted from other circumstances not involving the defendant’s alleged negligence. In making such an assertion, Mr. O’Neill was quick to add that he is not impugning Joseph R. Crafa, Esq., plaintiffs’ well-respected counsel, who is personally unaware of this alleged duplicity. If the plaintiff has made a false statement in a pleading regarding the circumstances of her fall, she will be held responsible for it, and, at the very least, defense counsel will have full access to question Ms. Savino at a deposition and to cross-examine her at trial. What defense counsel apparently fails to see, in making this argument, is that by turning over to plaintiffs the full, unredacted video surveillance tape, including the footage of the scene before the occurrence of the alleged accident, such a film would readily unmask and prove any contrivance!
Although the court in Rankin fails to elaborate on its expressed fear that a plaintiff, armed with evidence of a video surveillance tape, might somehow tailor his or her testimony regarding the actual facts of an accident’s occurrence — and the Rankin court does not even mention or discuss how that scenario might occur when the tape shows the actual event itself— the greater and more legitimate concern actually works in reverse. Specifically, a defendant store, shopkeeper, or enterprise that has exclusive possession of the tape, upon playing and repeatedly replaying it privately for internal staff and counsel, might realize that it was indeed guilty of criminality or liable or culpable for an intentional tort, such as a false arrest, or an act of negligence, such as not remedying or curing a known hazard. To avoid an award of compensatory and punitive damages, a business, enterprise, or store, unethically and illegally, might order the destruction of the videotape or fail to take appropriate safeguards to prevent its erasure allegedly occurring “in the ordinary course of business.”
In this respect, this court warns that if a subpoena or letter has advised a business or store not to destroy a video surveillance tape, and the full tape has not been preserved by the business as requested, the court will impose the appropriate sanction against such business and will instruct the jury regarding the business’ spoliation of a vital piece of evidence and the inferences to be derived therefrom.
*797 The defendant in this case, then urges, alternatively, that, in the event this court requires full, complete, and immediate production of the video surveillance tape, the names and addresses of the Waldbaum’s supermarket employees shown on the tape not be turned over to plaintiffs’ counsel immediately. Instead, defense counsel would require plaintiffs’ counsel to take the examination before trial of the manager of the Waldbaum’s supermarket and would require that he be asked as to each frame of the videotape for the name and address of the store employee depicted on the tape. This court will not require or allow the imposition of such a burdensome way of getting the names and addresses of important witnesses, best known to the defendant. Plaintiffs’ counsel is not required to jump through hoops before getting such important information.
Within 30 days of the service of a copy of this decision with notice of entry, and before the commencement of any depositions in this case, defendant shall supply the plaintiffs’ counsel with:
1. the full, unredacted video surveillance tape, starting from three hours before the alleged slip and fall through the taking of the plaintiff Kathleen Savino by emergency medical service personnel from the scene of the accident;
2. a complete list of the names, addresses, and telephone numbers of all store employees, managers, or any of its agents shown on the video surveillance tape;
3. all notes or memoranda, including handwritten notes, taken by defendant’s managers, employees, and staff of the accident including any accident report; and
4. all maintenance and repair records with respect to the roof and ceiling of the Waldbaum’s store, prior and subsequent to the accident.