OPINION OF THE COURT
Charles J. Markey, J.
Motion by defendants Ramabel Limo, Inc., and Glener V Simbana for summary judgment on the issue of liability and the motion by defendant Jules J. Jacobs, pursuant to CPLR 3126, to dismiss the complaint for plaintiffs failure to submit to independent medical examinations.
This decision raises an issue of first impression under New York law of whether a plaintiff, who has a pending personal injury action, has engaged in spoliation of evidence by undergoing surgery for her physical problems that she sustained allegedly as a result of the accident before defendants could conduct *713 independent medical examinations (IMEs). The court had invited the parties, even after the return date of the motions, to submit memoranda of law, but none of the submissions raised a case that was precisely on point, thereby leading this court to conduct its own independent legal research.
On December 2, 2009, the plaintiff Susanna Mangione (Mangione) was a passenger in a taxi, livery cab, or vehicle for hire (collectively referred to, for sake of convenience, as the taxi) owned by defendant Ramabel Limo, Inc. (Ramabel) and operated by defendant Glener V Simbana (Simbana). The vehicle carrying Mangione collided, in Queens County, with the car owned and operated by defendant Jules J. Jacobs (Jacobs).
First, defendants Ramabel and Simbana have moved for summary judgment only on the issue of liability, contending that the accident was solely the fault of defendant Jacobs. Mangione opposes the motion for summary judgment alleging that, while she was a passenger in the taxi, she had observed its driver, defendant Simbana, talking out loud, conveying the impression that he was, while driving, continuously engaged in conversation with someone while using either an earpiece or a “hands free” telephone device.
In opposing the motion, Mangione’s counsel correctly observes that the New York City Taxi and Limousine Commission, for numerous years, has forbade taxi and livery car drivers from engaging in any telephone conversations, even while using a “hands-free” device, except when the vehicle is parked. Defense counsel for Ramabel and Simbana contend that the regulation was not in effect on the date of the accident.
The starting point for the discussion is Vehicle and Traffic Law § 1225-c (3), exempting “hands-free” devices from the ban against motorists engaging in cell phone conversations while driving in New York State. (See also Vehicle and Traffic Law § 1225-c [1] [e] [defining a “hands-free mobile telephone”]; [2] [prohibiting cell phone conversations]; Matter of Smilow v New York State Dept. of Motor Vehs., 95 AD3d 1023 [2d Dept 2012] [discussing the presumption in Vehicle and Traffic Law § 1225-c (2) (a) and (b) that vehicle’s operator was engaged in a conversation with a prohibited cell phone while driving].)
Supreme Court Justice Martin E. Ritholtz of this court, in Morano v Slattery Skanska, Inc. (18 Misc 3d 464 [Sup Ct, Queens County 2007]), a significant judicial opinion concerning the use of cell phones while driving and the production of cell phone records, cites numerous articles on psychological science *714 and visual perception and observation, suggesting that “even the use of a ‘hands-free mobile telephone’ to engage in a call while operating a motor vehicle may contribute to causing an accident, and would be relevant to the issue of negligence.” (Id. at 474.)
This court agrees with plaintiff’s counsel that the New York City Taxi and Limousine Commission had in place regulations banning the use of “a portable or hands-free electronic device” (Rules of City of NY Taxi and Limousine Commn [35 RCNY] former §§ 2-25 [h]; 6-16 [u] [1]; current §§ 54-14 [e] [1]; 55-14 [g] [1]; see Tom Namako, Edmund Demarche & Katherine Romero, It’s Quiet a Ride: Crackdown on Chatty Hacks, NY Post, Dec. 18, 2009; Marisa Taylor, Digits, New York Cracks Down on Cab Drivers Using Cellphones, http://blogs.wsj.com/ digits/2009/10/20/new-york-cracks-down-on-cab-drivers-using-cell-phones [Oct. 20, 2009]) that were more severe and onerous on drivers of taxis, limousines, vehicles for hire, and livery cars than on the general pool of New York State motorists (Vehicle and Traffic Law § 1225-c [1] [e]; [3] [c] [permitting “a hands-free mobile telephone”]).
The Administrative Code of the City of New York, indeed, has a specific section governing “Passengers’ bills of rights.” It provides that passengers have a right to “a driver who does not use a cell phone (hand-held or hands free) while driving” taxicabs (Administrative Code of City of NY § 19-537 [c] [14]), livery cars (id. § 19-537 [d] [10]), and commuter vans (id. § 19-537 [e] [11]).
Following the reasoning of Justice Martin E. Ritholtz of this court, in Morano v Slattery Skanska, Inc. (18 Misc 3d 464 [2007], supra), this court holds that, under certain circumstances — even without relying on the rules and regulations applicable to drivers of taxicabs, livery cars, and commuter vans— the use of a hands-free cell phone can constitute a distraction for drivers. The conversation of the motorist, even on a hands-free mobile telephone device or apparatus, could divert the driver’s mental focus from watching the road to thinking about the topic of conversation. (See State v Malone, 2011 WL 2582730, *5, 2011 NJ Super Unpub LEXIS 1738, *15 [App Div, July 1, 2011, No. A-6176-09T4, per curiam] [“(T)he Legislature recognized that the use of a hands-free wireless telephone would ‘reduce’ the distractions associated with dialing, not eliminate the distractions associated with dialing”].)
Accordingly, as a matter of common-law negligence, Mangione, the plaintiff, has presented enough testimony at her dep *715 osition about Simbana’s conduct while driving to warrant the denial of the motion by defendants Ramabel and Simbana for summary judgment on the issue of liability.
In this regard, plaintiffs request for the production of the cell phone records of defendant Simbana should be granted, as limited to all cell phone records for December 2, 2009, the date of the accident.
The most important issue in this opinion is raised by the motion to dismiss by defendant Jacobs. The plaintiff, Mangione, who previously had been involved in other accidents and personal injury lawsuits, ignored numerous court orders requiring her appearance at independent medical examinations in this action. The purpose of an IME is to verify a plaintiffs alleged physical injuries and to determine the nature, extent, and cause of any injuries or medical conditions observed.
Specifically, in another action, Mangione v Metropolitan Tr. Auth. Bus Co., pending in this court under index number 20671/ 2009, and awaiting trial, the plaintiff claimed personal injuries to her back and shoulder — the same body parts that plaintiff contends were injured by the accident in the case at bar. In the earlier action under index number 20671/2009, plaintiff was a passenger in a bus on November 17, 2008, that allegedly came to a sudden stop, causing her to fall down. In that case, in two separate decisions, both dated December 2, 2011, and both entered on December 7, 2011, Justice Allan B. Weiss denied a defense motion for summary judgment and denied Mangione’s motion to consolidate that case with the instant action. The defendants in the present action contend that they have repeatedly requested the medical records from that earlier action involving Mangione as a rider on a bus, but, to date, they have not been produced, even though Mangione is being represented in both actions by the same counsel.[1]
On January 31, 2011, counsel for the parties in the case at bar appeared for a preliminary conference, and the undersigned issued an order directing that the plaintiff appear for IMEs within 45 days of her examination before trial (that was held on Sept. 14, 2011). On October 5, 2011, counsel for all parties in *716 the present case appeared before Justice Ritholtz for a compliance conference. Justice Ritholtz ordered that defendants designate their doctors for the IMEs within 30 days and that the plaintiff appear 30 days thereafter for the physical examination.
BMEGateway, Inc. (BMEGateway), a third-party vendor that arranges IME appointments for insurance companies, scheduled the plaintiff to be evaluated on October 27, 2011, at 1:00 p.m. and 1:15 p.m., at a facility in Forest Hills, in Queens County, by an orthopedic surgeon and a neurologist. The plaintiff failed to attend either of those physical examinations. They were adjourned to November 17, 2011, at 12:30 p.m. and 12:45 p.m., at the same facility, for both doctors to conduct the orthopedic and neurological IMEs.
On November 14, 2011, plaintiffs counsel filed a note of issue in this action, attaching a certificate of readiness signed by Sameer Chopra, Esq., of plaintiffs counsel, falsely claiming that “Physical Examinations [were] completed.” Mr. Chopra signed the certificate on November 10, 2011. On November 17, 2011, the plaintiff again failed to arrive for her IMEs.
In a commendable effort to avoid unnecessary motion practice, the defendants requested Justice Ritholtz again to hold a conference on the long-awaited IMEs, in addition to other items of discovery that plaintiff failed to provide. Justice Ritholtz held another conference on January 25, 2012, and signed an order that, in pertinent part, stated: “Plaintiff to appear within 30 days of designation. Defendant^] to designate IME’s [sic] within 14 days. Reports to be exchanged by defendants] within 45 days of examinations].” The so-ordered stipulation was signed by all counsel, including Mr. Chopra on behalf of the plaintiff, on January 25, 2012.
The defense orthopedic and neurological IMEs were then rescheduled for February 22, 2012. Plaintiffs counsel insists that it called BMEGateway to adjourn the IMEs. See affirmation of Alex Nocerino, Esq., dated July 11, 2012, and affidavit of William Rodriguez, a calendar clerk of Chopra & Nocerino, LLE] sworn to on June 20, 2012, alleging that they had conversations with a nonlawyer representative of BMEGateway.
Defense counsel dispute that BMEGateway (1) was ever advised that plaintiff was going to have spinal surgery, (2) had consented to another adjournment of the IMEs so that the plaintiff could have spinal surgery, and (3) was capable of adjourning the long-awaited and repeatedly postponed IMEs in the face of three court orders. Katherine Crooker, a customer *717 service manager, states, in her affidavit sworn to on July 9, 2012, that BMEGateway simply schedules IMEs and thus has no authority to agree to adjournments of IMEs so that a plaintiff could have elective surgery. Ms. Crooker, in fact, states that plaintiffs counsel was informed that GEICO, the insurer, would not consent to the adjournment of the thrice court-ordered IMEs.
BMEGateway, advised by Dr. Thomas Nipper, an orthopedic surgeon, that he could not attend the IMEs on February 22, 2012, adjourned the orthopedic IME to March 7, 2012. Plaintiff, in the meanwhile, had spinal surgery on February 27, 2012. Plaintiff has attached a copy of the report of the operation performed at Winthrop University Hospital, in Mineóla, New York, on February 27, 2012. Mangione did not attend either the neurological IME on February 22 or the orthopedic IME on March 7, 2012.
On behalf of the plaintiff, Mr. Nocerino argues that prior surgeries had been performed upon Mangione in 2010 and that four IMEs were conducted. The court has not been provided relevant information regarding the alleged prior surgeries performed on plaintiff allegedly in 2010, following her accidents in 2008 and 2009. Defense counsel does not address Mr. Nocerino’s claims of prior IMEs, but the court’s review of the attachments to Mr. Nocerino’s additional submission to the court suggests that those IMEs dealt only with plaintiffs entitlement to no-fault first-party benefits. Those IMEs clearly had nothing to do with the IMEs required to determine any claim of “serious injury” under the Insurance Law, since defense counsel in 2011 and 2012 were frustrated in getting IMEs by plaintiffs repeated failure to show up for IMEs.
The defense contention on the motion to dismiss the complaint is that plaintiffs surgery on February 27, 2012, and not going to IMEs prior to the surgery, despite three court orders, constituted the intentional spoliation of evidence warranting the most stringent sanction of dismissal of the plaintiffs complaint.
Spoliation of evidence, in all forms, thwarts the proper functioning of our courts. (See Cedars-Sinai Med. Ctr. v Superior Ct., 18 Cal 4th 1, 8, 954 P2d 511, 515 [1998] [“(T)he intentional destruction of evidence should be condemned. Destroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence *718 or to develop other evidence, which may be less accessible, less persuasive, or both”]; accord United States Fid. & Guar. Co. v American Re-Ins. Co., 93 AD3d 14, 31 [1st Dept 2012] [quoting approvingly a California trial court decision observing that insurer, concerned with a “litigation crisis,” destroyed documents in order “to make it more difficult for insureds to establish coverage”].)
The United States Court of Appeals for the Second Circuit, in Byrnie v Town of Cromwell, Bd. of Educ. (243 F3d 93, 107 [2001]), explained that spoliation sanctions serve three purposes:
“(1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation.”
To ensure that spoliators do not profit from their wrongdoing and to deter other, would-be spoliators from ignoring court orders and subpoenas, the Second Circuit, in Reilly v Natwest Mkts. Group Inc. (181 F3d 253, 267-268 [1999]), emphasized that federal district courts are empowered with wide discretion, under both inherent powers and rule 37 of the Federal Rules of Civil Procedure, to craft and fashion not just one measure, but a panoply of remedial devices to restore the plaintiff to the same position he would have been in absent the wrongdoing. In Reilly, the Second Circuit directed federal district courts to tailor the spoliation sanctions to the needs of each case, realizing that whether the destruction of evidence occurred as a result of a mistaken mishap or by intentional destruction, the resulting prejudice to the victim is the same: he is hampered, if not crippled, by the spoliation. (Reilly v Natwest Mkts. Group Inc., 181 F3d at 267-268.)
Earlier this year, in VOOM HD Holdings LLC v EchoStar Satellite L.L.C. (93 AD3d 33 [2012] [adopting federal standard], affg 2010 NY Slip Op 33759[U] [Sup Ct, NY County 2010, Lowe, III, J.]), the Appellate Division, First Judicial Department, set out to determine the scope of a party’s duties in the electronic discovery context, and the appropriate sanction for failure to preserve electronically stored information. The appellate court in VOOM held that the failure of parties to place a “litigation hold” on relevant evidence was, at a minimum, “grossly negligent.” (VOOM, 93 AD3d at 48.)
*719 The undersigned, in two officially reported decisions, dealt with issue of spoliation of evidence: Savino v Great Atl. & Pac. Tea Co., Inc. (22 Misc 3d 792 [Sup Ct, Queens County 2008]) and Lu Huang v Di Yuan Karaoke (28 Misc 3d 920 [Sup Ct, Queens County 2010]). In Savino, this court held that a defendant storekeeper was required to turn over an unredacted copy of a video surveillance evidence tape that would be crucial in determining whether the plaintiff feigned her slip-and-fall injury in a supermarket. In Lu Huang v Di Yuan Karaoke (28 Misc 3d 920 [2010]), this court held that plaintiffs application, by order to show cause, for a copy of respondent’s video surveillance tape, together with requests for the full name and address of the security company and the address of its employee security guard or “bouncer,” were all justified and proper as part of preaction discovery. The undersigned granted the request based upon “the demonstrated prejudice by the respondent’s cavalier and disingenuous stonewalling,” and the possibility that “respondent may be destroying or concealing the potent evidence.” This court stated in Lu Huang that “the principles of justice and fair play that underlie this court’s decision in Savino apply equally to this pre-action discovery matter.” (Lu Huang, 28 Misc 3d at 921.) This court added: “Any attempt to destroy the video surveillance evidence will be dealt with severely pursuant to this court’s seminal decision in Savino.” (Id. at 921-922.)
None of the parties has cited a case dealing with the issue posed in the present case of whether a surgery, done after plaintiff failed to appear for scheduled IMEs required by successive court orders, constitutes a spoliation of evidence. This court has thus engaged in its own independent and extensive legal research for any cases in point from any jurisdiction.
The only New York case remotely close is Payano v Milbrook Props., Ltd. (39 AD3d 518 [2007]), where the Appellate Division, Second Judicial Department, reversing the lower court, refused to presume that the disappearance of magnetic resonance imaging (MRI) films was the product of plaintiffs’ spoliation of evidence. The Appellate Division in Payano noted that the plaintiffs were not responsible for the missing MRI films and plaintiffs were also prejudiced by the films’ disappearance. (Id. at 519-520.) Thus, to preclude the plaintiffs from offering evidence at trial as to the causal relationship between the injured plaintiff’s alleged accident and her subsequent back surgery was error.
A persuasive precedent is Clark v E.I. DuPont de Nemours & Co. (2001 WL 1482831, 2001 Del Super LEXIS 453 [Del Super *720 Ct, Oct. 11, 2001, No. 97C-12-048-PLA, Peggy L. Ableman, J.], affd on op below 795 A2d 667 [Sup Ct 2002] [table; text at 2002 WL 392423, 2002 Del LEXIS 147 (2002)], cert denied 537 US 941 [2002], and subsequent order in Clark v Corporate Interiors of Del., 2004 WL 2419159, *1 n 2, 2004 Del Super LEXIS 336, *3 n 2 [Del Super Ct, Oct. 6, 2004, No. Civ.A. 03A-10-001PLA, Ableman, J.], affd on op below 871 A2d 1127 [Sup Ct 2005] [table; text at 2005 WL 277925, 2005 Del LEXIS 54 (2005)]). In Clark v E.I. DuPont de Nemours & Co. (2001 WL 1482831, 2001 Del Super LEXIS 453), the plaintiff filed his action in 1997 and, then, in 2001, four years later, and only eight days before a trial that had been scheduled for over a year, underwent elective hip replacement surgery.
The court in Clark v E.I. DuPont de Nemours & Co. found that the surgery prevented the defendants from conducting “any independent medical evaluation concerning the need for the surgery and/or whether it was related to the alleged incident.” (2001 WL 1482831, *2, 2001 Del Super LEXIS 453, *7.) Without mentioning even once the words “to spoil,” “despoiled evidence,” or “spoliation,” the court in Clark dismissed the plaintiffs complaint, finding that the defendants were irreparably injured and without a remedy by the plaintiffs failure to undergo an independent medical evaluation. Superior Court Judge Peggy L. Ableman stated:
“If the elective hip replacement surgery was postponed for a week, it could have also been postponed for two weeks, so as not to interfere with the trial. Moreover, no medical documentation has ever been provided to the Court to support any such sudden necessity for the operation.
“The second reason that dismissal is warranted herein is that, by his decision to go forward with surgery when he did, plaintiff has taken affirmative steps to insure that the defendants no longer have the capability of examining his pre-surgery condition in any meaningful way. By doing so, plaintiff has precluded the defendants from adequately preparing any defense to his claims that are now several times higher than they were before the surgery on May 25, 2001. Under these unusual circumstances, the Court is powerless to find an adequate remedy or to impose any sanction that will offset the prejudice to defendants, short of dismissal.” (Clark v E.I. DuPont de Nemours & Co., 2001 *721 WL 1482831, *7, 2001 Del Super LEXIS 453, *21-22.)
The Supreme Court of Delaware affirmed Judge Ableman expressly on her opinion, and the Supreme Court of the United States denied a writ of certiorari. (2002 WL 392423, 2002 Del LEXIS 147; 537 US 941.) Judge Ableman, in a later opinion in a related action, referred to her earlier opinion regarding the impropriety of the plaintiffs surgery being done without a prior IME, and the Supreme Court of Delaware again affirmed Judge Ableman expressly on her opinion. (Clark v Corporate Interiors of Del., 2004 WL 2419159, *1 and n 2 (see SM 2.2 (a) (3) (“Cite to both a pinpoint page and a footnote on the same page as follows ... 11 NY3d 223, 242 and n 10”) 2004 Del Super LEXIS 336, *2, 3 n 2 [2004] [reiterating the prior order and describing that “(t)he elective nature of this surgery and Clark’s reasons for choosing to do (it) at that particular time” reflected the plaintiffs “contempt for the judicial process, (whereby plaintiff) Clark earned himself a dismissal in that case”].)
Thus, even though the words “spoliation of evidence,” “spoliator,” “despoiled evidence,” or “to spoil” were not ever used by the court in Clark v E.I. DuPont de Nemours & Co. the defendants’ motion to dismiss the complaint in that case was granted, and affirmed expressly on the lower court’s opinion, because the plaintiff proceeded to have elective surgery without affording the defendants IMEs.
Other courts, however, have rejected the proposition that a plaintiffs surgery, without permitting an independent medical examination, be considered a form of spoliation of evidence. In Rebardi v Central Boat Rentals, Inc. (2007 WL 2993867, 2007 US Dist LEXIS 101014 [WD La, Oct. 11, 2007, No. 03-1776]), for example, the defendant sought spoliation sanctions. The federal magistrate judge refused to dismiss an action because the plaintiff did not attend scheduled supplemental IMEs. The magistrate judge did allow, however, for the possibility of recommending to the federal district court judge that an appropriate adverse inference and instruction be given to the jury against the spoliator. The magistrate judge said that the evidence was insufficient to show bad faith, wilful behavior, or intentional and contumacious conduct to warrant dismissal. (2007 WL 2993867, *33, 2007 US Dist LEXIS 101014, *95.)
In Menges v Cliffs Drilling Co. (2000 WL 765082, 2000 US Dist LEXIS 8478 [ED La, June 12, 2000, Civ.A. 99-2159]), the plaintiff underwent surgery before he could be examined by defense-designated doctors at IMEs. The federal district court judge rejected all spoliation sanctions, stating that no case has *722 been cited to the court equating breach of a duty to attend an IME as a spoliation of evidence. (2000 WL 765082, *3, 2000 US Dist LEXIS 8478, *6-7.) The court noted that plaintiff had given to defendant “full access to his medical records, again before the surgery, and defendant therefore had ample opportunity to investigate plaintiffs condition and to require an IME before plaintiff underwent surgery.” (2000 WL 765082, *3, 2000 US Dist LEXIS 8478, *7.) In the present case, aside from repeatedly securing court orders requiring IMEs, the defendants have complained that plaintiffs counsel has not made available all medical records, especially on the other action pending in this court, pertaining to Mangione’s fall on a bus, even though plaintiff is represented by the same counsel in both cases.
The same judge in Menges (now Chief) District Judge Sarah S. Vance, in another action, Savarese v Pearl River Nav., Inc. (2010 WL 1817758, 2010 US Dist LEXIS 54107 [ED La, Apr. 30, 2010, No. 09-129]), again rejected spoliation sanctions against a plaintiff who underwent neck surgery, stating that the defendant “had an opportunity to conduct an IME before [plaintiffs] surgery, and chose not to do so.” (2010 WL 1817758, *4, 2010 US Dist LEXIS 54107, *13.) The defendant, instead of making a timely request for an IME, chose to conduct depositions and review medical records, instead of scheduling an IME. (2010 WL 1817758, *5, 2010 US Dist LEXIS 54107, *17.)
In Collongues v State Farm Auto. Ins. Co. (2010 WL 103878, 2010 US Dist LEXIS 4841 [ED La, Jan. 7, 2010, No. 09-3202]), another judge of that court, rejected the imposition of any spoliation sanctions based on a plaintiffs neck surgery before an IME could be done. The court found that there was no evidence of intentional spoliation. The court also found that the defendant had ample time to schedule an IME, but did not do so.
Similarly, in Crooks v Coregis Ins. Co. (943 So 2d 649 [La App 3d Cir 2006], cert denied 949 So 2d 419 [2006]), the state court refused any spoliation sanctions, holding that there was no proof that the plaintiff did not comply with court orders and acted deliberately and in bad faith to deprive the defendants of a court ordered medical examination.
In Manpower, Inc. v Brawdy (62 P3d 391, 392-393 [Okla Ct Civ App 2002]), the court expressly refused to “equate the seeking and obtaining of medical treatment to spoliation of evidence.” The court thus held that a workers’ compensation claimant’s back surgery could not constitute spoliation of evidence and added that no case or authority has been cited “nor *723 has our research found any case, in which the seeking and receiving of medical treatment has been deemed to be a wrongful destruction of evidence.” (Id. at 392.) The Oklahoma appellate court in Manpower, in its above-cited decision of August 9, 2002, was thus evidently unaware of Judge Ableman’s 2001 decision in Clark (2001 WL 1482831, 2001 Del Super LEXIS 453) that was affirmed by the Supreme Court of Delaware on March 6, 2002, on Judge Ableman’s opinion, with rehearing denied on May 2, 2002.[2]
Expressly following the holding in Manpower, Inc. v Brawdy, the court in Janus v Twerskoi (2009 WL 7433856 [Colo Dist Ct, Apr. 14, 2009, No. 2007 CV 2197]) also refused to equate the obtaining of medical treatment as a spoliation of evidence. (Id. If If 10-11.) The Colorado state court in Janus v Twerskoi referred, without citation, to “the old trial lawyers’ maxim that ‘litigation cannot dictate medical treatment.’ ” (Id. 1111.) In Janus v Twerskoi, the plaintiff underwent restorative dental surgery without permitting the defendant the opportunity to film the plaintiffs mouth prior to surgery and to see how the alleged dental malpractice affected the plaintiff. (Id. 1f 8.) The court, although not calling the dental surgery a “spoliation,” decided to take “guidance from ‘spoliation’ cases” and called for the parties to do further factual briefing that may aid the court in determining whether an adverse inference and instruction or a lesser spoliation sanction was appropriate. (Id. Hit 18-25.)
Although the court’s opinion in Clark v E.I. DuPont de Nemours & Co. (2001 WL 1482831, 2001 Del Super LEXIS 453) did not mention “spoliation of evidence” or refer to that concept by name, the undersigned agrees with its reasoning, analysis, and holding. The undersigned, in the present case, thus holds that a plaintiff undergoing nonemergency and non-life-threatening surgery, thereby depriving the defendants of a court-ordered IME, can and does constitute the spoliation of evidence.
Not once in any of the submissions submitted by plaintiffs counsel is there any explanation or discussion of the sudden urgency to conduct spinal surgery on February 27, 2012, when *724 the accident in this case occurred in 2009. Plaintiff has not provided her affidavit, and no physician affirmations were submitted to this court to explain the urgent need to operate upon the plaintiff. Moreover, no explanation is offered by the plaintiff or her lawyers or doctors — especially in the face of three court orders mandating IMEs, one by the undersigned and two orders by Justice Ritholtz — discussing why such surgery, if allegedly necessary, could not wait a week, from February 27, 2012, to March 7, 2012, so that the IMEs could be performed.
Mangione alleges, in her other pending action of Mangione v Metropolitan Tr. Auth. Bus Co., under index number 20671/ 2009, that she fell in a bus in 2008. In this action, plaintiff contends that her earlier sustained physical injuries were exacerbated and aggravated by this accident. The two accidents occurred in 2008 and 2009. This court issued three orders requiring IMEs in 2011-2012, and the plaintiff repeatedly failed to show up at the IMEs. No explanation has been given by the plaintiff, her lawyers, or her doctors, on this motion to dismiss, of why the plaintiff had to have surgery on February 27, 2012, and why that surgery could not be delayed for a week, until after the IMEs could be conducted on March 7, 2012. Their silence on these dispositive points speaks volumes.
No reasonable person would deprive a plaintiff of a life-saving surgery or any operation that would curb intense pain and alleviate injury. Plaintiff has not demonstrated anything or proffered any evidence on this issue. Even assuming arguendo that plaintiff needed such vital or life-saving surgery immediately and that defense counsel was unreasonably withholding its consent, the plaintiff’s counsel should have arranged with defense counsel for an immediate telephone conference with either Justice Ritholtz, who had signed and issued the court’s order of January 25, 2012, or with the undersigned. Plaintiff also could have moved for the surgery by an order to show cause. Plaintiff took neither of these reasonable measures. Plaintiffs counsel was well aware that, in the absence of a compelling reason for immediate surgery, the court would have required Mangione to appear at the IMEs before any surgery.
Plaintiffs counsel, instead, dealt only with the defendants’ medical scheduling service whose sole function was to schedule the requested IMEs and had no other responsibilities, legal or otherwise, with regard to this action. BMEGateway had no right or interest to consent to the plaintiff having her surgery before the IMEs could be done.
*725 In Allstate Social Work & Psychological Servs., PLLC v Utica Mut. Ins. Co. (30 Misc 3d 90 [App Term, 2d Dept 2011]), the court referred to a medical consulting firm that handled and scheduled IMEs on behalf of defendants. However, under the facts of this case, where, on January 25, 2012, Justice Ritholtz signed a third court order mandating plaintiffs appearance at IMEs, for the plaintiffs counsel to bypass both Justice Ritholtz and the undersigned, as the assigned IAS justice, and instead attempt to secure another adjournment of the IME by going to the scheduling service for the defendants was improper, manipulative, and deceitful.
BMEGateway, at any rate, disputes that it consented to an adjournment so that the plaintiff could have surgery, without advising its principals, and it makes no sense for BMEGateway to have consented to such an adjournment, in the absence of a demonstrated, acute need for surgical intervention. Certainly from the date of January 25, 2012, where Justice Ritholtz so-ordered a stipulation governing further discovery and specifically discussed the scheduling of the IMEs that were discussed in two prior court orders, plaintiffs counsel should have been dealing with Justice Ritholtz or the undersigned, upon notice to all defense counsel — and not intentionally subverting the process and the three court orders by going to the service hired by defendants to schedule IMEs. Instead, plaintiffs counsel, who, in November 2011, submitted and filed with the court a note of issue accompanied by a certificate of readiness falsely stating that all physical examinations were “completed,” decided to avoid dealing with the court.
Mr. Chopra, in one of the submissions to this court, says that Mangione was in a coma for several days following her surgery. Even if true, the fact that Mangione may have been in a post-surgical coma for a few days does not support, countenance, or bolster the immediate rush for an operation, where three court orders directed attendance at IMEs.
This court concludes that Mangione’s spinal surgery on February 27, 2012 was knowingly scheduled by the plaintiff and her counsel to frustrate the court-ordered IMEs, especially the order of Justice Ritholtz of January 25, 2012, and that the aforementioned operation constituted a spoliation of evidence.
In deciding on an appropriate remedy and spoliation sanction, a court, considering all the circumstances of a particular case, is vested with broad discretion and, if appropriate, is not constrained to impose the least onerous sanction. (See Chrysler *726 Corp. v Carey, 186 F3d 1016, 1022 [8th Cir 1999]; American Bldrs. & Contrs. Supply Co., Inc. v Roofers Mart, Inc., 2012 WL 2992627, *5, 2012 US Dist LEXIS 101842, *12-13 [ED Mo, July 20, 2012, No. 1:11-CV-19 (CEJ)].) The decision to apply spoliation sanctions should take a case-by-case approach. (Chin v Port Auth. of N.Y. & N.J., 685 F3d 135, 162 [2d Cir 2012].)
Although not restricted to the least onerous sanction, in order not to deprive a party of his or her day in court, a court should consider whether the damage and prejudice to a victim of spoliation are irreparable or may be remedied by the imposition of lesser spoliation sanctions, short of outright dismissal of a pleading. (See Chrysler Corp. v Carey, 186 F3d at 1020; Process Controls Intl., Inc. v Emerson Process Mgt., 2011 WL 5006220, *7, 2011 US Dist LEXIS 121369, *20-21 [ED Mo, Oct. 20, 2011, No. 4:10CV645 CDP].) In the calculus of appropriate sanctions, a court must also consider, as discussed above, deterring other would-be spoliators; otherwise, a judicial opinion that simply slaps a wayward litigant on the wrist for disobeying three court orders might embolden and reward miscreants who would destroy, rather than preserve and furnish, an important piece of evidence. A court should not give its imprimatur to an intentional destruction of evidence and thwarting of court orders, if it intends to stem a contagion of spoliation.
The particular sanction must be tailored for the factual circumstance and procedural posture of the case, the type of spoliation involved, the degree of prejudice, and the level of culpability of the litigant and his, her, or its counsel. The court must also calculate whether the integrity of court orders and other court processes, such as subpoenas and other litigation notices vital to the functioning of the courts, are at issue and the type, degree, and intensity of efforts of a litigant to put the potential spoliator on notice of the item sought to be preserved and produced, and its importance to any criminal or civil investigation and litigation.
The issue of a party’s intent permeates the common law, and conduct is deemed more serious when committed with the intention to destroy and cause harm. As Supreme Court Justice Oliver Wendell Holmes, Jr., stated, in his treatise The Common Law: “Even a dog distinguishes between being stumbled over and being kicked.” (Holmes, The Common Law 3 [1881]; see Bazley v Tortorich, 397 So 2d 475, 480 [La 1981].)
Any risk in devising the appropriate sanction should be weighted against the spoliator of evidence, who may have *727 calculated that the destruction and spoliation of evidence is a better bet than any mild sanction that a court might impose. (See Byrnie v Town of Cromwell, Bd. of Educ., 243 F3d 93, 107 [2001], supra.) In this connection, shortly before his death, writing on a different issue, Mr. Chief Justice Harlan F. Stone stated for the majority of the United States Supreme Court: “The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.” (Bigelow v RKO Radio Pictures, Inc., 327 US 251, 265 [1946].)
In the present case, the prejudice to the defendants is extensive since Mangione seeks damages based on the exacerbation and aggravation of her earlier injuries, resulting allegedly from the fall in a bus in 2008 — the subject of an earlier action. Thus, by undergoing her surgery in February 27, 2012, and not submitting to the thrice court-ordered IMEs, Mangione and her counsel have made it impossible for defendants to uncover any evidence of causation and defend against her claims.
The Appellate Division, Second Judicial Department, has held that pleadings will be struck even if the destruction of the evidence occurred before the spoliator was named a party to an action, especially where the intentional destruction severely hampers the other party from making his case. (See e.g. Ingoglia v Barnes & Noble Coll. Booksellers, Inc., 48 AD3d 636 [2008]; Baglio v St. John’s Queens Hosp., 303 AD2d 341 [2003]; New York Cent. Mut. Fire Ins. Co. v Turnerson’s Elec., 280 AD2d 652 [2001]; DiDomenico v C & S Aeromatik Supplies, 252 AD2d 41 [1998]; accord Byrd v Alpha Alliance Ins. Corp., 2012 WL 360033, *6-8, 2012 US Dist LEXIS 12520, *16-24 [MD Tenn, Feb. 2, 2012, No. 2:10-CV-0116] [dismissing action for spoliation of evidence; “While it is conceivable that an appropriate instruction to the jury could level the evidentiary playing field between the parties, the court believes that a harsher sanction is warranted in light of the plaintiffs egregious conduct. Indeed, a less severe sanction may not effectively deter would-be spoliators from engaging in similar conduct in the future”]; Gutman v Klein, 2011 WL 683939, 2011 US Dist LEXIS 15601 [ED NY, Feb. 15, 2011, No. 03 Civ.1570 (BMQ(RML), Cogan, J.] [ordering a default judgment for the plaintiffs based upon defendants’ spoliation of computer evidence]; Ashton v Knight Transp., Inc., 772 F Supp 2d 772 [ND Tex 2011] [striking of defense pleadings and defenses]; Veolia Transp. Servs., Inc. v Evanson, 2011 WL 5909917, 2011 US Dist LEXIS 136544 [D Ariz, Nov. 28, 2011, *728 No. CV 10-01392-PHX NVW] [default judgment]; Ameriwood Indus., Inc. v Liberman, 2007 WL 5110313, 2007 US Dist LEXIS 74886 [ED Mo, July 3, 2007, No. 4:06CV524-DJS] [court granted plaintiff partial default judgment because defendants destroyed evidence by installing a scrubbing software on their computer]; Williams v Russ, 167 Cal App 4th 1215, 1223, 84 Cal Rptr 3d 813, 820 [2008], review denied [Jan. 21, 2009] [“A terminating sanction is appropriate in the first instance without a violation of prior court orders in egregious cases of intentional spoliation of evidence”]; Antonucci v Home Depot U.S.A., Inc., 34 Misc 3d 1212[A], 2012 NY Slip Op 50061[U] [Sup Ct, Dutchess County 2012] [upon defendant’s motion, court dismissed complaint for spoliation of evidence].)
Other measures, short of the terminating sanction of dismissing a complaint or striking an answer, discussed immediately above, designed to punish those litigants and their counsel who engage in spoliation of evidence, include:[3]
1. The giving of an adverse inference jury instruction. (See e.g. Byrnie v Town of Cromwell, Bd. of Educ., 243 F3d at 110; Reilly v Natwest Mkts. Group Inc., 181 F3d 253, 267-268 [1999]; Kravtsov v Town of Greenburgh, 2012 WL 2719663, 2012 US Dist LEXIS 94819 [SD NY, July 9, 2012, No. 10-CV-3142 (CS), Seibel, J.] [court will give adverse inference instruction based on destruction of videotape, together with all costs plaintiffs incurred by the videotape’s destruction]; Aviva U.S.A. Corp. v Vazirani, 2012 WL 71020, *8, 2012 US Dist LEXIS 3069, *24 [D Ariz, Jan. 10, 2012, No. CV 11 0369 PHX JAT] [“The Court finds adverse inference instructions to be warranted to the extent Defendants’ spoliation affects Plaintiffs’ ability to prove their claims”]; Apple Inc. v Samsung Elecs. Co., Ltd., — F Supp 2d —, 2012 WL 3042943, *8, 2012 US Dist LEXIS 103958, *66 [ND Cal 2012, Grewal, M.J.] [adverse inference jury instruction, *729 set forth in decision, was appropriate where defendants did not disable a company-wide “auto-delete” function of its default email system; “In effect, Samsung kept the shredder on long after it should have known about this litigation, and simply trusted its custodial employees to save relevant evidence from it”]; Jung Kyung v Neiman Marcus Group, Inc., 2012 WL 2865778, 2012 NJ Super Unpub LEXIS 1681 [NJ Super Ct, App Div, July 13, 2012, No. A-3485-10T1] [adverse inference for defendant’s cherry-picking in selectively destroying segments of a videotape]; Alieva v United Parcel Serv., Inc., 96 AD3d 563, 564 [1st Dept 2012] [adverse inference, and not striking of answer, was proper spoliation sanction, where the destroyed file on the employee “does not constitute the sole source of the information and the sole means by which plaintiff can establish his case”]; Mendez v La Guacatala, Inc., 95 AD3d 1084 [2d Dept 2012] [destruction of videotape warranted adverse or negative inference instruction, rather than striking of answer]; Matter of Village of Port Chester [Bologna], 95 AD3d 895 [2d Dept 2012]; Lentz v Nic’s Gym, Inc., 90 AD3d 618 [2d Dept 2011].)
2. Precluding the spoliator from offering evidence or the principal of the spoliator from testifying. (See e.g. FatPipe Networks India Ltd. v XRoads Networks, Inc., 2012 WL 192792, 2012 US Dist LEXIS 7686 [D Utah, Jan. 23, 2012, No. 2:09-CV-186 TC DN] [precluding the spoliating party from introducing evidence]; United States v Yevakpor, 419 F Supp 2d 242, 247, 251 [ND NY 2006] [government deliberately preserved only three segments of a video surveillance tape, destroying the remaining 87.5% of the tape, while knowing that the subject of the video was facing criminal proceedings; court barred use of any portion of the tape as a spoliation sanction against the government]; Multiservice Joint Venture, LLC v United States, 85 Fed Cl 106 [2008] [principal of spoliator prevented from testifying in addition to other spoliation sanctions for significant alteration to exhibit], affd 374 Fed Appx 963 [Fed Cir 2010] [per curiam; unpublished opinion]; Commonwealth v Vlastos, 26 Mass L Rptr 518, 2010 WL 986507, 2010 Mass Super LEXIS 58 [Super Ct, Feb. 22, 2010, No. 2008-10947 (001-004)].)
3. Precluding the spoliator from introducing any expert testimony or report to explain the destruction of evidence. (See e.g. VOOM HD Holdings LLC v EchoStar Satellite L.L.C., 93 AD3d 33 [2012] [affirming, in all respects, decision of Justice Lowe, in Supreme Court, New York County, from calling nonparty expert witness at trial and from introducing his expert *730 report; appellate court found that the destruction of emails for a four-month period, when a “litigation hold” should have been placed on electronically stored information, was, at a minimum, “grossly negligent”].)
4. Barring cross-examination at trial. (See e.g. McCargo v Texas Roadhouse, Inc., 2011 WL 1638992, *9, 11, 2011 US Dist LEXIS 49320, *22, 28-29 [D Colo, May 2, 2011, No. 09-CV-02889 WYD KMT] [defendant found “highly culpable” in destruction of critical portions of videotape; court bars defendant, as a spoliation sanction, from cross-examining plaintiff’s witnesses at trial regarding certain events, in addition to attorneys fees and costs].)
5. Burden shifting at trial. (See e.g. Farella v City of New York, 323 Fed Appx 13, 15 [2d Cir 2009] [burden shifting might be a spoliation sanction in an appropriate case]; Williams v Russ, 167 Cal App 4th 1215, 1226-1227, 84 Cal Rptr 3d 813, 822-823 [2008] [court, in shifting the burden based on the intentional spoliation of evidence, stated: “(B)urden shifting is proper when (one party’s) wrongdoing makes it practically impossible for the plaintiff to prove its case”]); and
6. Permitting a victim of spoliation who has amassed other proof to survive the spoliator’s motion for summary judgment. (See Wood v Pittsford Central School Dist., 2008 WL 5120494, 2008 US App LEXIS 24733 [2d Cir, Dec. 8, 2008, No. 07-0892-cv] [reversing lower court, Second Circuit held that intentional destruction of relevant evidence warranted that defense motion for summary judgment be denied]; Byrnie v Town of Cromwell, Bd. of Educ., 243 F3d 93 [2001] [defendants’ spoliation of evidence was adequate grounds for denying their summary judgment motion based on qualified immunity]; Kronisch v United States, 150 F3d 112, 125-128 [2d Cir 1998] [same; “(A)t the margin, where the innocent party has produced some (not insubstantial) evidence in support of his claim, the intentional destruction of relevant evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line”], overruled on other grounds Rotella v Wood, 528 US 549 [2000]; Kravtsov v Town of Greenburgh, 2012 WL 2719663, 2012 US Dist LEXIS 94819 [2012], supra; Aviva U.S.A. Corp. v Vazirani, 2012 WL 71020, *8, 2012 US Dist LEXIS 3069, *24 [“If Plaintiffs believe that Defendants’ spoliation affects their ability to dispute summary judgment, Plaintiffs may propose an appropriate adverse inference in response to any motion for summary judgment”]; Burgos v Satiety, Inc., 2011 *731 WL 6936348, *3, 2011 US Dist LEXIS 149707, *6-7 [ED NY, Dec. 30, 2011, No. 10-CV-2680, Gleeson, J.]; Volcan Group, Inc. v T-Mobile USA, Inc., 2011 WL 6141000, 2011 US Dist LEXIS 142159 [WD Wash, Dec. 9, 2011, No. CIO 711 RSM] [striking all motions other than the spoliation motion and staying all proceedings, recognizing that the remedies for eviscerating a party’s case takes precedence over any other motion]; Nicholson v Board of Trustees for the Conn. State Univ. Sys., 2011 WL 4072685, 2011 US Dist LEXIS 103094 [D Conn, Sept. 12, 2011, No. 3:08cvl250 (WWE)] [dispositive motion by defendants for dismissal or summary judgment would be denied as a sanction for spoliation].)
In the case at bar, this court, reflecting on all of the facts, including the apparent intent of the plaintiff and her counsel, the issuance of three court orders not obeyed by plaintiff, and weighing the severe, irreparable prejudice to the defendants, decides that the only effective spoliation sanction is a terminating one: dismissal of Mangione’s complaint. (See Clark v E.I. DuPont de Nemours & Co., 2001 WL 1482831, 2001 Del Super LEXIS 453.)
The court does not consider the alternative sanctions appropriate to the particular facts of this case or efficacious to remedy the prejudice sustained by the defendants. Considering the irreparable prejudice to defendants of the spoliation, where Mangione’s surgery has eviscerated the means of defense doctors and lawyers of tracing the causal connection of Mangione’s ailments to the most recent accident, and the intentional thwarting of three court orders, dismissal is the appropriate sanction.
Especially in the present action, the court-ordered IMEs were of crucial importance for a jury to determine whether the plaintiffs present injuries were causally connected to the accident in the taxi in 2009, as opposed to that of her fall in the bus in 2008 — at issue in another action pending in this court, and whether the 2009 taxi accident exacerbated and aggravated the earlier injuries. Plaintiff and her counsel, however, deprived the jury and the court of such evidence by not attending the IMEs.
The fact that plaintiff, in opposition to the motion, offers the surgical report of the operation on February 27, 2012, does not reduce the prejudice sustained by the defendants.
In Bermel v Dagostino (50 AD3d 303 [1st Dept 2008]), the Appellate Division ordered a reluctant and uncooperative *732 plaintiff to attend IMEs. In the case at bar, this court, in fact, issued — not only one — but three such orders. The issues involved in this case have been in front of three justices of this court: Justice Weiss, Justice Ritholtz, and the undersigned. Supreme Court Justice Louis D. Brandéis decried impotent, toothless, paper tigers in the law. “The disgrace that has come to the law, the discredit, the disrespect which has come to the law, is because it is inefficient, and because we make rules and we do not provide any machinery for enforcing them.” (The Social and Economic Views of Mr. Justice Brandéis 402 [Alfred Leif ed, Vanguard Press, Inc. 1930] [quoting excerpts of Brandéis’s testimony on “Price and Business Incentive” before a United States House of Representatives Subcommittee on May 15, 1912]; also quoted in The Words of Justice Brandéis 120 [Solomon Goldman ed, Henry Schuman, Inc. 1953].)
This court believes that court orders must be defended. (See e.g. Coley v Baez, 30 Misc 3d 1208[A], 2011 NY Slip Op 50016[U] [Sup Ct, Queens County 2011] [undersigned struck defendant’s answer for failing to comply with multiple court orders mandating his examination before trial, despite defense counsel pleas that the defendant had allegedly been diagnosed with stage IV cancer].) The consequence of not punishing those who ignore state court orders is to foster the perception that such orders are not mandatory directions, but merely precatory guidelines and suggestions, to be altered by the litigants and their lawyers at whim, with little worry about reprisal.
In Mendez v La Guacatala, Inc. (95 AD3d 1084, 1085 [2012], supra), the Appellate Division, Second Judicial Department held that the IAS court was “overly harsh” in striking an answer for a defendant’s destruction of a videotape, and that the better sanction was that of ordering an adverse, negative inference at trial. That decision, not cited by any of the litigants in this action, is distinguishable. In Mendez, the integrity of court orders or court processes, such as subpoenas, subpoenas duces tecum, or other notices fundamental to the operation of the courts was not at stake. Also, in Mendez, the plaintiff’s sole attempt to obtain a videotape that recorded an assault was his lawyer’s one letter, sent five days after the incident, written in English, to the owner of the bar who spoke and understood only Spanish and who was not a lawyer. The facts of Mendez are thus distinguishable from the present case, where this court issued three orders, of which plaintiff and her counsel were aware, mandating the orthopedic and neurological IMEs, and the defendants *733 properly and assertively sought plaintiffs attendance at physical examinations.
In Clark v E.I. DuPont de Nemours & Co. (2001 WL 1482831, *8, 2001 Del Super LEXIS 453, *23-24), discussed above, in dismissing the plaintiffs complaint with prejudice for not attending IMEs and undergoing surgery, the court commented:
“If plaintiff has chosen to join his attorney by contributing to this complicity through dishonesty, then he has done so at his own peril. And, if he was not made fully aware of the consequences of his decision to participate in such a scheme, then that becomes a matter strictly between him and his counsel, regardless of the existence or non-existence of malpractice coverage. What is most clear is that the defendants should not be required to continue to defend plaintiffs claims under these circumstances.”
This court echoes those sentiments voiced by Judge Ableman in Clark. In the present case, Mangione has had her day in court, or, more appropriately, “at least a full opportunity to have [her] day in Court.” (Clark v E.I. DuPont de Nemours & Co., 2001 WL 1482831, *7, 2001 Del Super LEXIS 453, *22.)
This court thus orders:
1. The defense motion by defendants Ramabel and Simbana for summary judgment only on the issue of liability is denied;
2. The motion to dismiss the complaint by defendant Jacobs for spoliation of evidence is granted, and the complaint is dismissed as to all defendants;
3. The plaintiffs request for the cell phone records of defendant Simbana is denied as moot; and
4. The other branches of the defense discovery motion seeking other items of discovery is also denied as moot.

. On July 23, 2012, in Mangione v Metropolitan Tr. Auth. Bus Co., under index number 20671/2009, in the action concerning Mangione as a bus passenger, Dario Perez, Esq., of the law firm of LaRock & Perez, LLIJ filed a notice of appearance as trial counsel to Chopra & Nocerino, LLIJ attorneys of record for plaintiff. In that action, the Trial Scheduling Part, on July 24, 2012, vacated the plaintiffs note of issue.

. The failure of the Oklahoma appellate court in Manpower to discover the Clark opinion is probably attributable to the term “spoliation” not being included by Judge Ableman in the court’s opinion in Clark, thereby making discovery of the Clark opinion difficult since legal researchers, using electronic legal research websites, were most likely seeking cases of an operation or surgery being termed a “spoliation.”

. The list set forth above of other spoliation sanctions is not intended to be all-encompassing. Courts should be free to devise remedies to meet a spoliator’s inventiveness. Thus, depending on the factual context of a case, other spoliation sanctions, not discussed in the text above, would include granting the moving party a default judgment, the retention of forensic experts at the spoliator’s expense, the imposition of attorney fees and costs for all hours needed to be spent in, not only making a spoliation sanctions motion, but in attending depositions, hiring expert witnesses, etc., in order to overcome the effect of the spoliation, to whatever degree possible, when the case is presented to the jury or trier of fact. The sanction should be sufficient to remedy the prejudice caused to the moving party, i.e., to restore “the lack of integrity in the case being presented to the jury.” (See Chrysler Corp. v Carey, 186 F3d at 1022.)